Barbara T. WILSON,
Plaintiff-Respondent,

v.

Theodore D. McNEAL et al.,
Defendants-Appellants.

The PULITZER PUBLISHING COMPANY, Plaintiff-Respondent,

v.

Theodore D. McNEAL et al.,
Defendants-Appellants.

Nos. 39223, 39264.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Dec. 5, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 12, 1979.

Applications to Transfer Denied
Feb. 13, 1979.

Albert J. Stephan, Jr., Kenneth C. Brostron, Lashly, Caruthers, Thies, Rava & Hammel, St. Louis, for defendants-appellants.

Benjamin Roth of the American Civil Liberties Union of Eastern Missouri, St. Louis, for Barbara T. Wilson.

Robert B. Hoemeke, Evans, Hoemeke & Casey, St. Louis, for The Pulitzer Pub. Co.

SNYDER, Judge.

Respondents, the Pulitzer Publishing Company (Pulitzer) and Barbara T. Wilson (Wilson), in separate suits against appellants, members of the St. Louis Board of Police Commissioners (Board) were granted injunctions by the trial court, enjoining the Board, among other things, from denying respondents access to a report made by the Bureau of Inspections of the St. Louis Police Department pertaining to an investigation into the death of Joseph Lee Wilson. The Board has appealed from the judgments granting the injunctions. Upon motion, the cases were consolidated for appeal. The judgments are reversed and remanded with instructions to dissolve the injunctions.

This is a case of first impression under Missouri's Sunshine Law, Chapter 610, RSMo Cum.Supp.1975. The question to be answered is whether the exemptions from disclosure authorized in § 610.025 [1] are limited in any way as to time. This court holds that an investigatory record, closed as authorized in § 610.025(4) is not required to be opened to the public after the investigation is concluded and a final decision made to take no action based on the report.

Joseph Lee Wilson died on August 25, 1971 while in police custody. Investigation was conducted by the Internal Affairs Division of the Bureau of Inspections of the St. Louis Metropolitan Police Department to determine whether Wilson's death was caused by misconduct on the part of any personnel of the St. Louis Police Department.

Pulitzer had filed suit earlier against the Board requesting the trial court to order the Board to grant Pulitzer access to certain arrest registers, arrest records and police reports of the St. Louis Police Department and to permanently enjoin the Board from denying Pulitzer access to those documents. Section 610.030 of the Sunshine Law specifically authorizes circuit courts to grant injunctive relief. While Pulitzer's arrest record suit was pending the Inspector of Police transmitted the Wilson report to the Board for its review.

On August 25, 1976 by unanimous vote the Board found the charge that unidentified police officers were responsible for Wilson's death "is not sustained." According to Board rules this finding meant that there was insufficient evidence available to either prove or disprove the allegations in the complaint. Pulitzer and representatives of Wilson demanded the right to inspect the Wilson report. The Board refused to accede to their demands.

Pulitzer then amended its earlier petition relating to arrest records to include a request that the Board be enjoined from denying it access to reports of completed investigations filed with the Board by the Bureau of Inspections. While the Pulitzer suit was pending, the Board adopted a policy permitting public inspection of the arrest records and no issue relating to these records has been raised on appeal.

Barbara T. Wilson filed her petition for injunction on September 24, 1976 seeking to prevent the Board from denying her access to the report of the Bureau of Inspections concerning the incidents surrounding and leading up to the death of her husband, Joseph Lee Wilson, and the records prepared by or submitted to the Bureau of Inspections in connection with its investigation and upon which the report on Joseph Lee Wilson's death "was based and from which the report was prepared."

Cross-motions for summary judgment were filed in both cases.

The affidavit of Inspector of Police, Lt. Col. Atkins Warren, Commander of the Bureau of Inspections, was filed in support of the Board's motion for summary judgment. The affidavit described the mission of the Bureau of Inspections and the circumstances of the Bureau's investigation of the Wilson death. Lt. Col. Atkins Warren further stated such investigations are of a confidential nature and that the resulting reports contain elements of hearsay. According to the affidavit, the disclosure of such an internal investigation file would seriously compromise the mission of the Bureau of Inspections.

An August 25, 1976 statement of Col. T. D. McNeal on behalf of the Board was also filed in support of the Board's motion for summary judgment. The statement set forth the refusal to make a public disclosure of the Wilson investigatory file. It was also pointed out in the statement that investigations of the death of Mr. Wilson had been made by the Homicide Division, the Inspector of Police, the Coroner's Office, a St. Louis circuit court grand jury, a federal grand jury, the Federal Bureau of Investigation and the Civil Rights Division of the U.S. Department of Justice and that none of these seven agencies had found sufficient evidence to justify proceeding against any member of the St. Louis Police Department.

1. Unless otherwise noted, all statutory references are to RSMo Cum.Supp.1975.

Col. McNeal stated it was a Board policy of many years standing not to make public any investigatory file. He said further that there were numerous good reasons for the policy and among them listed the following:

(a) Investigators assigned to the Inspector's Office and the Homicide Division are required to check out every lead, including hearsay and rumors. Thus, the names of many innocent persons appear in these files. The release of such files could lead to the unjust ruin of reputations and careers of innocent citizens;

(b) Police Officers who submit reports must feel free to honestly state their opinions and conclusions without the fear that these remarks will be made public, or possibly subject them to personal liability.

The trial court granted Pulitzer's motion for summary judgment by ruling that "completed reports of investigations made by the Bureau of Inspections, after the matter is finally closed and no litigation nor hiring, firing or promotion of personnel is contemplated, should be records open to the public" and permanently enjoined the Board from denying Pulitzer access to such completed reports, specifically including the Wilson report.

The trial court granted Wilson's motion for summary judgment and permanently enjoined and restrained the Board from denying plaintiff the opportunity to inspect the report made by the Bureau of Inspections on the death of Joseph Lee Wilson and the records prepared by or submitted to the Inspector's Office in connection with the investigation and upon which the report was based and from which it was prepared.

The Board's appeals followed.

This has been a difficult decision. The very basic right of the public to be fully informed of government activities conflicts with the obvious necessity for restraints on this right to know in the case of litigation, meetings and records relating to personnel, mental health matters, military matters and juvenile and certain other court proceedings. The conflict here is one between the philosophy of openness in government, which for the last few years has been the subject of much discussion and legislation on both the federal and state levels, and the recognized need for confidentiality in certain special situations. The legislature recognized both the need for openness and the concomitant need for exempting certain types of information from disclosure when it passed the Sunshine Law in 1973. This conflict, coupled with the need to divine the legislative intent behind the Sunshine Law, presents a problem of some magnitude, and is further complicated by a lack of precedent in this developing field of law.

The first open records law was passed by the General Assembly in 1961 but it was never referred to as a Sunshine Law, perhaps because that designation had not yet come into fashion. It provides in §§ 109.-180 and 109.190, RSMo 1969 that "except as otherwise provided by law, all state, county and municipal records kept pursuant to statute or ordinance shall at all reasonable times be open for a personal inspection by any citizen of Missouri, . . . ." Penalties are provided for noncompliance.

Not all government records are kept pursuant to statute or ordinance, however, and the 1973 Sunshine Law, in an all inclusive definition, describes public records as "any record retained by or of any public governmental body . . . ." § 610.010(4).

A public governmental body is defined as:

[A]ny constitutional or statutory governmental entity, including any state body, agency, board, bureau, commission, committee, department, division, or any political subdivision of the state, of any county or of any municipal government, school district or special purpose district, and any other governmental deliberative body under the direction of three or more elected or appointed members having rulemaking or quasi-judicial power. [§ 610.010(2)].

The statute then mandates open meetings and public disclosure of "public records" as follows:

Except as provided in section 610.025, and except as otherwise provided by law, all

public votes shall be recorded, and if a roll call is taken, as to attribute each "yea" or "nay" vote, or abstinence if not voting, to the name of the individual members of the public governmental body, and all public meetings shall be open to the public and public votes and public records shall be open to the public for inspection and duplication. [§ 610.-015].

In § 610.025 there are five subsections which provide for closed meetings, records or votes which are exempt from disclosure. The two exemptions pertinent here read as follows:

2. Any meeting, record or vote pertaining to legal actions, causes of action, or litigation involving a public governmental body, . . . may be a closed meeting, closed record, or closed vote.

. . . . .

4. . . . . meetings relating to the hiring, firing or promotion of personnel of a public governmental body may be a closed meeting, closed record, or closed vote.

The Board contends that the Wilson report and similar final investigatory reports are records which may be closed under § 610.025(2) and (4) of the Sunshine Law and that these records may remain exempt from disclosure as long as the Board, as the involved public governmental body, wants to maintain the confidentiality. Respondents argue that the reports in question are public records open to the public for inspection and duplication under Chapter 610, and that they do not fall within the classes of meetings, records or votes which may be closed under the statute. In the alternative, respondents contend if they do fall within the exemptions, the reports should be opened when action on them is completed.

■ The Board does not explicitly admit or deny in its pleadings that the Wilson report is a public record as defined in Chapter 610. Its briefed contention that the report is a closed record under § 610.025, however, is a tacit admission that it falls

within the public record definition of the statute, § 610.010(4). It could hardly be argued otherwise. The report here in question is a "record retained by" the Board of Police Commissioners, a public governmental body under the statute. See *Cohen v. Poelker,* 520 S.W.2d 50 (Mo. banc 1975).

Preliminarily it must be decided whether the Wilson report and other similar reports fall within the category of matters exempted from disclosure by the statute. If the report does not fall within the definition of matters permitted to be closed under § 610.-025, the injunction was properly granted and the judgments must be affirmed.

■ In reality, the Board here has made two decisions: (1) these documents fall within the statutory exemptions from disclosure and (2) these documents will not be disclosed. The second decision clearly is committed by the statute to the Board's discretion, but the first decision may be challenged and examined in the courts. In this case, the uncontroverted affidavit of Lt. Col. Atkins Warren has supplied the basis for the determination that the Wilson report is a report included in the definition of those exempt from disclosure under § 610.025(4) relating to the "firing" of personnel. The affidavit stated:

The purpose of the investigation was primarily to determine whether Mr. Wilson's death was caused by any misconduct on the part of any personnel of the St. Louis Metropolitan Police Department. If such misconduct had been found, my duties as Inspector of Police would have required me to initiate procedures against any such person or persons which could have led to dismissal from the Department.

■ In addition, the trial court in its memorandum opinion correctly found that, "With regard to the Wilson report, it is not denied by plaintiff and indeed there can be no question that in its original compilation this investigative report was made in contemplation of possible disciplinary proceedings which might result in the 'firing . . . of personnel of a public governmental body.'"

Because the Wilson report may be a closed record relating to personnel matters as authorized by § 610.025(4), there is no need to consider the question of whether it falls within § 610.025(2) which authorizes closed records pertaining to legal actions or litigation.

The order in the Pulitzer case enjoined the Board from denying Pulitzer access to all reports of completed investigations filed with the Board by the Bureau of Inspections, including the Wilson report. The decision on this appeal will apply to the Wilson report and any other Bureau of Inspection reports falling within the disclosure exemptions permitted by § 610.025. It is possible, however, that future Bureau of Inspection reports will not fall within the statutory exemptions and hence will be subject to disclosure.

The trial court held that since the Joseph Lee Wilson case is now concluded and no disciplinary action contemplated, the report, although initially exempted from disclosure under § 610.025(4), should now be made public. The reasoning was that once an investigation is concluded and any "potential sequelae" are eliminated, the statutory exemptions from public disclosure become meaningless and that a public purpose would be served by disclosure of the report. The court, however, admitted that the statute is silent as to the duration of the confidentiality permitted for the matters exempted from disclosure by § 610.025.

Respondents and the trial court relied heavily on the Oregon case of *Jensen v. Schiffman*, 544 P.2d 1048 (Or.App.1976). In *Jensen* a report of an investigation of the police department of the city of Reefsport, Oregon was made. Plaintiff sought a copy of that report. The Oregon statute, Or. Rev.Stat. § 192.500, provided that "investigatory information compiled for criminal law purposes" was exempt from disclosure. The parties stipulated that the report was compiled for criminal law purposes and the court based its decision on that understanding. The case is not very helpful and can be distinguished in many respects. The court in *Jensen* was not considering a report prepared for personnel disciplinary purposes. The Oregon statute contains a provision that records are exempt "unless the public interest requires disclosure in the particular instance." The Missouri statute contains no similar language.

Further, although their decision clearly favored the philosophy of disclosure and indicated an *in camera* examination revealed the report appeared to be available for public inspection, the Oregon court did not order the report disclosed. After rejecting the extreme positions of both parties, the court remanded the cause to the trial court for further consideration in light of its interpretation of the Oregon statute. A portion of the report was admittedly exempt from disclosure because it involved pending civil litigation. The court also spoke to the question of confidential sources, which are exempt from disclosure under the Oregon law, and said merely that the defendant presented no evidence as to information submitted in confidence. Apparently, if there had been such evidence at least portions of the report would have been exempt for confidential source reasons.

The Oregon court compared the Oregon statute and the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), *as amended* by Pub.L. No. 94–409, § 5(b) (1976), after which the Oregon law apparently was modeled. The court based its decision in part on the 1974 amendments to 5 U.S.C. § 552(b)(7) which limited the exemption from disclosure of federal investigatory records compiled for criminal law purposes by allowing the records to be kept confidential only if the disclosure would result in certain specified detriments to individuals or the law enforcement process.[2]

2. 5 U.S.C. § 552(b)(7) provides an exemption for:
(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the

Prior to the passage of the 1974 amendments it was held in *Weisberg v. U. S. Dept. of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1973), and other cases,[3] that investigatory information compiled for criminal law purposes was exempt from disclosure after the investigation for which it was compiled was closed. There was a split of authority[4] among the courts, however, and Congress, to clarify the law, amended it to limit the exemptions from disclosure. At least *Weisberg, supra,* and the cases at footnote 3 construed the federal act to allow indefinite exemption from disclosure before the limiting amendment was passed, lending support to the Board's contention that the Missouri statute should be similarly construed. In addition, in the federal law there are certain classes of records and meetings relating to personnel matters and to the accusing of any person of a crime or formally censuring a person that are exempted from disclosure, apparently for as long as the concerned agency decides they should remain confidential. 5 U.S.C. § 552(b); 5 U.S.C. § 552b(c).

Although federal statutes and decisions are not controlling on Missouri courts, the provisions and legislative history of the FOIA and the related court decisions lend some support to the position of the Board.

Among other cases from foreign jurisdictions Pulitzer also cites *Moak v. Philadelphia Newspapers, Inc.,* 336 A.2d 920 (Pa. Cmwlth.1975) which construed Pennsylvania's "Right to Know Act." The case is not in point. The exemption from disclosure provision in *Moak* was " 'any record . . which would operate to the prejudice or

impairment of a person's reputation or personal security, . . . .' " Pa.Stat.Ann. tit. 65, § 66.1(2) (Purdon) (as amended 1971). The records in question were the payroll records of the Philadelphia Police Department. The Commonwealth Court of Philadelphia affirmed the judgment of the trial court allowing access to the records, holding that where the records themselves would not operate to prejudice or impair police officers' reputations, they were not exempted from disclosure, even though correlation of the records with information in a crime commission report could result in identification of officers accused of corrupt and improper conduct. The Pennsylvania and Missouri statutes are dissimilar, as are the exemption provisions, and the case does not support respondents' position.

Pulitzer also cites *Farrell v. Village Bd. of Trustees, Village of Johnson City,* 83 Misc.2d 125, 372 N.Y.S.2d 905 (1975). *Farrell,* too, involved a statute and exemption different from the provisions of the Missouri Sunshine Law. The 18 page report in question, however, concerned an investigation of the conduct of police officers. Although the appellate court directed the disclosure of three written reprimands it held that most of the report should be kept confidential because it was "part of investigatory files compiled for law enforcement purposes" as exempted by the statute, saying, at page 908:

The Legislature specifically exempted such matters from disclosure. Investigatory files are apt to consist of remarks, gossip, guesses, impressions, hearsay, relevant information, irrelevant information, comments, surmises, data and facts.

---

case of record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel; . . . .

**3.** See *Aspin v. Department of Defense,* 160 U.S. App.D.C. 231, 491 F.2d 24 (1973); *Frankel v. Securities and Exchange Commission,* 460 F.2d

813 (2d Cir. 1972), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972); *Evans v. Department of Transportation of United States,* 446 F.2d 821 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); *Koch v. Department of Justice,* 376 F.Supp. 313 (D.C.Dist.1974).

**4.** See *Bristol-Myers Co. v. Federal Trade Commission,* 138 U.S.App.D.C. 22, 424 F.2d 935 (1970), cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970).

The Legislature decided it would be best not to have such medley of matters disclosed.

Disclosing the reprimands in *Farrell* without the other matter in the report is comparable to disclosing only the Board's final decision in the case at bar, the decision that the facts do not warrant any disciplinary action. *Farrell* is more supportive of the Board's position than that of the respondents.

Another foreign case relied on by Pulitzer is *Miami Herald Publishing Company v. Collazo*, 329 So.2d 333 (Dist.Ct.App.1976). Again the case is distinguishable. The trial court in *Miami Herald Publishing Company* sealed the terms of the settlement of a civil suit brought by Collazo against the city of Miami. No sunshine law was involved. Instead, the decision to order disclosure was posited on an abuse of discretion by the trial court in exercising its inherent power to do all things reasonably necessary for the administration of justice. The appellate court reversed, holding that the trial court abused its discretion in ordering the terms of the settlement sealed.

In an effort to obtain as much information as possible, the laws of 28 states relating to public disclosure were reviewed.[5] None contain language similar to that in Missouri's Sunshine Law. Most relate to meetings instead of records and allow closed or executive sessions when discipline or dismissal of employees is being considered. There is a thread of general intent running through this type of legislation, as adopted in other states, to exempt from disclosure matters relating to appointment, employment, discipline or dismissal of employees. In some states the employee being investigated is permitted to open to the public an otherwise closed meeting. Perusal of these statutes has only served to emphasize that the problem of closing personnel matters is recognized in nearly all jurisdictions which have passed open meetings legislation. However, the review did not shed any light on the problem of the duration of the record closure being considered here.

*Farrell, supra,* and the provisions and legislative history of the federal FOIA are mildly persuasive that the duration of the exemptions from disclosure under § 610.-025(4) is at the discretion of the public governmental body. But the language of the law itself, construed in accordance with accepted principles, must be the basis for decision. Pulitzer admits in its brief that the primary issue in the appeal is the construction to be given § 610.025.

██ It is axiomatic that in construing a statute a court's primary duty is to give effect to legislative intent as expressed in the words of the statute. *Cohen, supra.* Provisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end that the court deems beneficial. *Missouri Public Service Co. v. Platte-Clay Elec. Coop.,* 407 S.W.2d 883 (Mo.1966). "We are guided by what the legislature says, and not by what we think it meant to say." *United Air Lines, Inc. v. State Tax Commission,* 377 S.W.2d 444, 448 (Mo. banc 1964).

5. Alaska Stat. § 44.62.310 (1976); Ariz.Rev. Stat.Ann. §§ 38–431 to 38–431.09 (1978); Ark. Stat.Ann. §§ 12–2801 to 12–2807 (as amended 1976); Cal. Gov't Code § 6254 (West) (as amended 1977); Conn.Gen.Stat. §§ 1–18a to 1–19 (1977); Fla.Stat. § 286.011 (1971); Haw. Rev.Stat. §§ 92–1 to 92–13 (1976 Replacement Vol.); Ill.Ann.Stat. Ch. 102, §§ 41–46 (Smith-Hurd) (as amended 1977); Ind.Code Ann. §§ 5–14–1.5–1 to 5–14–1.5–7 (Burns) (1977); Iowa Code Ann. §§ 68A.1 to 68A.9 (as amended 1976); Me.Rev.Stat. tit. 1, §§ 401–406 (1975); Md.Ann.Code art. 76A, §§ 1–15 (1977); Mass. Ann.Laws ch. 4, § 7, cl. 26(a)–(i) (Michie/Law. Co-op) (as amended 1977); Mich.Comp.Laws §§ 15.261 to 15.275 (1976); Minn.Stat. § 471.- 705 (as amended 1975); N.J.Rev.Stat. §§ 10:4–6 to 10:4–21 (1975); N.M.Stat.Ann. §§ 5–6–23 to 5–6–26 (1974); N.Y.Pub.Off.Law §§ 95–106 (McKinney) (1976); N.C.Gen.Stat. §§ 143.318.1 to 143.318.7 (1971); Ohio Rev.Code Ann. § 121.22 (Anderson) (as amended 1975); Okla. Stat. tit. 25, §§ 301–304 (1977); Or.Rev.Stat. §§ 192.410 to 192.500 (1973); Pa.Stat.Ann. tit. 65, § 66.1 (Purdon) (as amended 1971); Vt.Stat. Ann. tit. 1, §§ 311–314 (amended 1973); Va. Code §§ 2.1–340 to 2.1–346 (as amended 1977); Wash.Rev.Code §§ 42.17.250 to 42.17.340 (as amended 1975–1976, as approved at the election of Nov. 2, 1976) W.Va.Code §§ 29B–1–1 to 29B–1–6 (1977); Wisc.Stat. §§ 19.81–19.98 (1975).

It is not disputed that the intent of the legislature should control; nor is it arguable that the legislature in passing Chapter 610 intended to let the sunshine in on public meetings, records and votes. Likewise, it is clear that the legislature intended to exempt certain meetings, records and votes from public disclosure.

Pulitzer asserts that § 610.025(4) pertains only to *meetings* relating to personnel matters. The language of the section is not as clear as it might be, but as Pulitzer admits in its brief, it is obvious that if a meeting is to be closed, the records of the meeting must also be closed, a conclusion with which it would be difficult to disagree. The Wilson report and supporting documents are records of closed meetings relating to the firing of personnel and fall within the exemption described in § 610.025(4).

Section 610.025 contains no words limiting the closing of the meetings, records or votes described in the section. There are no words in any other part of Chapter 610 which limit the exemptions from disclosure. Respondents have not cited any portion of the statute which even remotely hints at an intention on the part of the legislature to place a time limit on the closing of the meetings, records and votes which were allowed to be exempted from the Sunshine Law. The statute says, "[M]eetings relating to the hiring, firing or promotion of personnel of a public governmental body may be a closed meeting, closed record, or closed vote." § 610.025(4). Obviously discretion to close is granted to the concerned public governmental body, in this case the Board. The Board has elected to close the record as they are empowered to do under the statute. There may be good reasons from a public policy standpoint for revealing the Wilson report and the underlying documents, but courts must construe a statute as it stands, *England v. Eckley*, 330 S.W.2d 738 (Mo.banc 1960), and must give effect to it as it is written. *State v. Patton*, 308 S.W.2d 641 (Mo.banc 1958). This court may not engraft upon the statute provisions which do not appear in explicit words or by implication from other language in the statute.

Respondents urge a decision based upon a philosophy of openness and disclosure in government instead of a decision based upon the plain language of the statute. The legislature has decided that certain meetings, records and votes may be closed. Having granted the authority to the public governmental body to close the records, the legislature has said nothing about the duration of that privacy.

If the members of the General Assembly had intended to limit the duration of the exemption would they not have included some provision to that effect in the statute? Perhaps because sunshine legislation is of recent origin the question of a time limit on exemptions was not brought to the attention of the lawmakers. On the other hand, it is just as likely that the subject of limits to exemptions was considered, debated and rejected. There are no legislative records which furnish this information, but the law itself contains no words to support the position of respondents. There is no language saying when, if ever, closed matters must be opened to the public. In judicial construction of statutes the legislature is presumed to have acted with full knowledge of the subject matter, relevant facts and existing conditions. *Smith v. Pettis County,* 345 Mo. 839, 136 S.W.2d 282 (Mo.1940); *Mack Motor Truck Corporation v. Wolfe,* 303 S.W.2d 697 (Mo.App. 1957); 82 C.J.S. Statutes § 316 page 541.

It is not for a court to speak for the legislature. It is the duty of the representatives of the people to write our statutes and if records of investigations relating to the hiring, firing or promotion of personnel of public governmental bodies are to be given only a limited time exemption, then the legislature should set the limits after thorough consideration of all pertinent problems in the hearings and debates inherent in the legislative process. As the law is written it must be held that the exemption from disclosure for closed meetings, records or votes relating to the hiring, firing or promotion of personnel of public governmental bodies continues after final action is taken.

An affirmance would establish a precedent for public disclosure, once final action had been taken, of all meetings, records and votes pertaining to personnel matters of the police board and all other public governmental bodies. It would be impossible for school boards, for example, to obtain confidential information relating to disciplinary problems or the hiring and discharge of personnel, because once the hiring, firing or promotion was accomplished, the record would be open to the members of the public and press. Knowledgeable persons would refuse to supply facts and information because of the fear of ultimate public disclosure.

If respondents' view of the statute were to be upheld, § 610.025(4) would become almost meaningless. The exemption from disclosure would cease when the personnel decision had been made and all of the personal information considered by the agency would be exposed to the public gaze. The possibility of harm to reputation or employment would be substantial. At the very least, persons involved might be caused embarrassment or humiliation. If the purpose of the exemption is to permit candid, open and confidential discussion of personnel matters within a public governmental body, the purpose is defeated if members and informants know that, although the initial discussion and any record made are confidential, they are immediately open to the press and public once a decision is made or a vote taken. No purpose could be served in closing the meeting initially.

■ A more unreasonable result would occur if a closed vote, once taken, were to be subject to immediate disclosure. The closed vote provision in the statute means nothing if the only time the vote would be closed would be during the actual vote taking. The legislature is presumed to intend a logical and reasonable result. *McCarthy v. Board of Trustees of the Fire Retire. Sys.*, 462 S.W.2d 827 (Mo.App.1971). There is also a presumption that the legislature did not intend unreasonable consequences. 82 C.J.S. Statutes § 316 page 546.

Although the ruling here is based upon the construction of the statute, the construction is given strong support by the nature of the Wilson report. The report contains hearsay and unverified information, some of it obtained from confidential sources. Witnesses were told their interviews were confidential. Disclosure of the report would inhibit officers and citizens from divulging information in the future. Confidential sources and investigative techniques would be revealed and the efforts of the Bureau of Inspections to maintain proper discipline would be prejudiced.

Meetings, records or votes closed as authorized under § 610.025(4) may remain closed indefinitely at the discretion of the supervising public governmental body. If the legislature had intended otherwise, it would have placed some type of time or other limitation upon the closing authority, or perhaps granted to the courts the power to decide what should remain closed and what should be revealed to the public. An appellate court cannot and should not order a limitation when the legislature omitted to do so. Such judicial usurpation of the legislative function has been a too frequent occurrence in court decisions at all levels in recent years.

The purpose of the statute is not defeated by dissolving these injunctions. The purpose of the statute is accomplished through the mandatory public disclosure of the vast majority of public records and votes and the opening of nearly all public meetings, many of which in the past were concealed from the press and the public. The exemptions from disclosure under consideration here pertain to a minimum of governmental activity.

The judgments of the trial court are reversed and remanded with instructions to dissolve the injunctions.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.