**STATE of Missouri ex rel. ST. LOUIS COUNTY, Missouri, Relator,**

v.

**The Hon. Susan BLOCK, Judge of the Circuit Court of the 21st Judicial Circuit of Missouri, Division No. 40, Respondent.**

**No. 42751.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 11, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Thomas W. Wehrle, St. Louis County Counselor, Karen C. Moculeski, Asst. County Counselor, Clayton, for relator.

Frank J. Kaveney, Douglas M. Brooks, Clayton, for respondent.

SIMON, Judge.

This is an original proceeding in prohibition seeking to prohibit respondent, Judge of the 21st Judicial Circuit of Missouri, from entering an order overruling relator's motion to quash a notarial subpoena duces tecum served upon the Director of the Bureau of Internal Affairs of the St. Louis County Police Department, in the case of State of Missouri v. Richard Dean (defendant). Generally, the defendant seeks production of material contained within the records of the Bureau's investigation into the alleged misconduct by Officer Ralf Kreling in connection with defendant's arrest.

Defendant was charged with assaulting Officer Kreling, specifically Assault Third Degree, a misdemeanor. The incident allegedly occurred on November 22, 1979, when Officer Kreling was effecting the arrest of defendant following an automobile accident in which defendant was involved. Defendant maintains that Officer Kreling led him to an isolated area where Officer Kreling abused him with racial slurs and beat him with a nightstick. Defendant registered a complaint against Officer Kreling with the St. Louis County Police Department which prompted an investigation by the Bureau of Internal Affairs.

Archie L. Rippeto (Rippeto), Director of the Bureau of Internal Affairs of the St. Louis County Police Department, was served with a notarial subpoena duces tecum to appear for a deposition in the law offices of Dean's attorney and said subpoena requested:

"any and all papers, documents, notes (handwritten or otherwise), memoranda, reports, investigations, recordings, statements and recommendations concerning an Internal Affairs Investigation into an alleged assault or other misconduct by Officer Ralf Kreling, D.S.N. 1721 of the St. Louis County Police Department, which incident allegedly occurred on or about Nov. 22, 1979 at or near Lindberg (Highway 61) and Lemay Ferry Road or South County Shopping Center, with the alleged victim being one Richard Dean, and which investigation was referred to as # 79–379 in the files of the St. Louis County Police Department."

St. Louis County (relator) moved to quash the subpoena on the grounds that the information, documents and records sought are inadmissible as evidence and are privileged because the files of the Bureau of Internal Affairs are confidential and closed as a matter of law pursuant to § 610.025 RSMo 1978.[1] Further, that in accordance with department procedures concerning complaints filed against an officer, an officer is required to answer questions relating to their duties and can be disciplined, up to and including dismissal, for refusing to answer such questions. Also, the procedure further provided that any required statement could be used in a disciplinary action but would be inadmissible in a subsequent criminal action. Following oral argument on the motion, respondent sustained relator's motion to quash. Subsequently, respondent, on the court's own motion, set aside its ruling and ordered an *in camera* examination of the subpoenaed records, with deletion of any and all statements of any other party other than questions posed to Officer Kreling and his responses as well as any written or oral statements made by Officer Kreling. The questions, answers and statements were to be handed over to Dean. Relator petitioned our court for a writ of prohibition which was preliminarily granted.

The crucial issue raised in this particular factual situation is: jurisdictionally, can the court conduct as *in camera* examination of the material and information described in the subpoena duces tecum and if so, must the court make a determination of the relevancy and materiality of the material and information prior to turning that material and information over to defendant for use in his defense. We rule in the affirmative.

1. All statutory references are to RSMo 1978 unless otherwise noted.

■ Pursuant to Criminal Rule 26.02(b),[2] (former Rule 25.19), a subpoena duces tecum may command the person to whom it is directed to produce books, papers, documents, or other objects designated therein. The purpose of this rule is to enforce production of documents or objects at trial that contain evidence, material and relevant to the issues, and to require prior production and inspection of such records or objects if prior production will expedite trial. The trial court is without jurisdiction to enforce a subpoena duces tecum or to make an order to produce for inspection in the absence of good cause shown, which should appear from the motion, the evidence or admissions of the parties that the sought-after material contains evidence that is relevant and material to the issues. *State ex rel. Phelps v. McQueen*, 296 S.W.2d 85, 89 (Mo.banc 1956). Under Rule 26.02(c) the court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.

■ Rule 26.02 vests the trial court with broad discretion in determining whether good cause exists for the enforcement of a subpoena duces tecum. While the burden was on defendant to show good cause for the enforcement of the subpoena, in this proceeding the burden rests upon the relator to show that the respondent (trial court) exceeded its jurisdiction in failing to quash the subpoena. *State ex rel. Phelps v. McQueen, supra* at 89.

Relator contends that the trial court exceeded its jurisdiction in failing to quash the subpoena because the files maintained by the Bureau of Internal Affairs are confidential and closed as a matter of law under Chapter 610 RSMo 1978 and are confidential and closed in accordance with department procedures and further, the order permits a "fishing expedition" for discovery materials without a prior showing of materiality.

Section 610.015 provides generally that "all public meetings shall be open to the public and public votes and public records shall be open to the public for inspection and duplication." This general rule of disclosure is, of course, subject to certain enumerated exemptions provided in § 610.025. It is the relator's contention that, under the authority of *Wilson v. McNeal*, 575 S.W.2d 802 (Mo.App.1978), the investigatory files of the Bureau of Internal Affairs are closed records under the exemption provided in § 610.025(4) as "relating to the hiring, firing or promotion of personnel of a public governmental body," and thus none of the material contained within the files need be produced in response to a subpoena under the circumstances of this case.

Respondent argues that the notions of due process and the defendant's right to confront witnesses against him require that defendant have access to Officer Kreling's statements.

Secondly, respondent argues that Officer Kreling's statements are statements of a witness in the hands of the state, and therefore must be disclosed by the state to the defendant as a matter of right and without court order under Criminal Rule 25.03.[3]

2. The record indicates that the subpoena duces tecum was not issued pursuant to the procedures set forth in Rule 25.03 or 25.04. Defendant did not request the material and information under those rules, but merely had a notarial subpoena duces tecum issued. The propriety of this procedure has not been raised by the parties and therefore we shall not review it.

3. Rule 25.03 provides in part:
(A) Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

(1) The names and last known addresses of person whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements;

\*    \*    \*    \*    \*    \*

(C) If the defense in its request designates material or information which would be discoverable under this Rule is in the possession or control of the state, but which is, in fact, in possession or control of other governmental personnel, the state shall use due diligence and make good faith efforts to cause such materials to be made available to the defense counsel,

In *Wilson*, Barbara Wilson and the Pulitzer Publishing Company each filed a petition for an injunction seeking to prevent the Board of Police Commissioners from denying access to records of the Internal Affairs Division of the Bureau of Inspections of the St. Louis Metropolitan Police Department concerning the incidents surrounding the death of Joseph Lee Wilson, who died while in police custody. The records to which the petitioners sought access were the product of an investigation to determine whether Wilson's death was caused by misconduct on the part of any Police Department personnel. On appeal from an order granting the injunction, our court dissolved the injunction and thereby denied access to the petitioners, holding that the investigatory records may be closed to the public as authorized in § 610.-025(4).[4]

While we agree that the files which are the subject of this action fall within the holding of *Wilson*, we are constrained to conclude that *Wilson* does not dispose of the issues herein presented. In *Wilson*, our court was concerned with a problem of statutory construction to determine whether the investigatory records fall within the enumerated statutory exemptions from public disclosure and the duration of that exemption. In the instant case, we are confronted with the issue of whether respondent exceeded her jurisdiction in ordering an *in camera* inspection of the files and in allowing defendant to have access to statements made by the prosecuting witness against him in a criminal proceeding. Here the need for confidentiality must be balanced against the constitutionally based rights of an accused to confront and cross-examine an adverse witness (*Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and to have access to information material to the determination of guilt or innocence and/or punishment. (*Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). In other contexts, when these rights have been at stake, otherwise confidential information has been required to be disclosed under appropriate circumstances. For example, disclosure of the name of a confidential informant is required where disclosure is relevant to the defense of the accused, essential to a fair disposition of the case, necessary to avoid the risk of false testimony, or vital to secure useful testimony. *State v. Hanson*, 587 S.W.2d 895, 903 (Mo.App.1979). In *Davis v. Alaska, supra*, the United States Supreme Court, while recognizing a strong state policy in protecting the anonymity of juvenile offenders, held that the fact of a juvenile's adjudication and his probation status is a permissible area of cross-examination if directed toward revealing specific "biases, prejudices, or ulterior motives of the witness as they may relate to the issues or personalities in the case at hand" and where such inquiry could cause serious damage to the strength of the state's case. These cases do not suggest, however, that otherwise confidential material must always submit to the demands of a criminal defendant. See *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978). A decision as to when one of these important but conflicting concerns must yield to the other necessarily depends upon the facts of each case.

Here we are faced with a strong need to maintain the confidentiality of the Bureau of Internal Affairs' investigatory files. This confidentiality is essential to protect the integrity of the police department and to maintain an effective disciplinary system. The files contain hearsay and unverified information, some of it obtained from confidential sources. Witnesses have been told their interviews were confidential. Systematic disclosure would inhibit officers

and if the state's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court, upon request, shall issue suitable subpoenas or orders to cause such material or information available to the state for disclosure to the defense."

4. Meetings, records or votes closed as authorized under § 610.025(4) are closed "at the discretion of the supervising public governmental body." *Wilson v. McNeal*, 575 S.W.2d at 811.

and citizens from divulging information in the future. *Wilson v. McNeal, supra* at 811.

Since this is the first time a Missouri court has addressed this specific problem, it would be beneficial to look at the decisions of other jurisdictions. While these cases are by no means controlling, they do provide helpful insight into the issues raised.

In the case of *State v. Pohl*, 89 N.M. 523, 554 P.2d 984 (Ct.App.1976), defendant was convicted of battery upon a peace officer. She appealed claiming the trial court erred in not conducting an *in camera* inspection of the internal affairs' files concerning the arresting officer to determine whether the files contained evidence, material and relevant to the defense, before quashing her subpoena duces tecum which was issued to obtain those files. The court held that under the circumstances the trial court erred in not conducting an *in camera* inspection to determine whether the files contained evidence material to the defense. The court stated: "Records may be confidential as against the public at large but an inspection must be allowed when the defendant's guilt or innocence may hinge on whether the jury believes the arresting officer is the aggressor." (Citations omitted) *State v. Pohl*, 554 P.2d at 985. The court noted that defendant had shown no prior instances of the officer's alleged misconduct and therefore defendant's request for an *in camera* inspection by the judge could not rightly be called a "fishing expedition."

In *State v. Fleischman*, 10 Or.App. 22, 495 P.2d 277 (1972), defendant was convicted of assault with intent to kill a police officer. One of defendant's points on appeal was that the trial court erred in refusing to allow defense counsel access to the police department's personnel records concerning the police officer. Defense counsel stated they believed the officer's personnel records would reveal that the officer had been involved in other violent encounters while making arrests, and that the officer had been the aggressor in those other encounters, and that the jury could infer therefrom that the officer rather than the defendant was the aggressor. The trial court examined the subject file *in camera* and found there was nothing in the file relative to defendant's guilt or innocence. After examination of the subpoenaed files on appeal, the Court of Appeals of Oregon disagreed, and found that the officer's records did, in fact, contain evidence which if believed by a trier of fact would be seriously considered by that trier of fact in determining guilt or innocence. In reversing the conviction and remanding for a new trial, the court stated: "When the state chooses to prosecute an individual for crime, it is not free to deny him access to evidence that is relevant to guilt or innocence even when otherwise such evidence is or might be privileged against disclosure." *State v. Fleischman*, 495 P.2d at 282.

On the other hand, in cases where the defendant failed to demonstrate any theory of relevancy and materiality, discovery or inspection by the accused has been denied. *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924 (N.Y.1979); Misc. In *Gissendanner*, which contains an excellent review of this area of the law, defendant was found guilty of the sale of narcotics. The issue on appeal was the propriety of the trial court's refusal to honor defendant's request that it issue a subpoena duces tecum requiring the production of personnel records of two police officers, the principal witnesses against the defendant. In support of his application, defense counsel stated that the purpose was to "find material appropriate for cross-examination"; at no time did he request the court to conduct its own *in camera* inspection of the personnel files before determining whether any of the contents should be disclosed. The Court of Appeals of New York upheld the trial court's ruling on the ground that "defendant's counsel made no pretense but that the records' contents would not directly bear on the hard issue of guilt or innocence; he cited no possible line of inquiry in which they might be employed beyond that of general credibility impeachment." In arriving at its conclusion, the court citing relevant authority observed:

"[W]hen a defendant shows a likelihood that the witness' prior criminal or disciplinary record may provide a motive to falsify, disclosure of this information has been held warranted. (citations omitted) Also, when prior bad acts allegedly contained within disciplinary or personnel records bear peculiar relevance to the circumstances of defendant's case, detailed cross-examination and disclosure, usually after an *in camera* inspection, have been permitted. (citations omitted) . . . .

Conversely, access has been denied in cases in which the defendant failed to demonstrate any theory of relevancy and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness." (citations omitted) 423 N.Y. S.2d at 897, 399 N.E.2d at 928.

A common theme of these cases is a concern that defendant have access to exculpatory material and information. While these cases do not require that defendant make a preliminary showing that the sought-after records actually contains exculpatory material and information, "[w]hat they do call for is the putting forth in good faith of some factual predicate which would make it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw." *People v. Gissendanner*, 423 N.Y. S.2d at 897, 399 N.E.2d at 928.

Here, respondent has ordered an *in camera* inspection of the subpoenaed files to delete any and all material except questions posed to Officer Kreling and his answers and statements made by Officer Kreling which were to be handed over to defendant without any prior determination of materiality by the respondent.

The subpoenaed records may well contain material which a trier of fact would consider in determining guilt or innocence and which may be exculpatory. This is particularly true considering the nature of the crime charged together with the fact that the investigation by the Bureau of Internal Affairs centered around alleged misconduct on the part of Officer Kreling in effecting defendant's arrest. Statements made by Officer Kreling concerning the circumstances of defendant's arrest are more likely to be material to a determination of the guilt or innocence of the defendant. In keeping with requirements of due process then, defendant's access to the investigatory files should not be arbitrarily denied.

In the light of the foregoing principles of law, we read respondent's order overruling relator's motion to quash as reflecting respondent's limited power to determine by an *in camera* inspection those questions, answers and statements of Officer Kreling which are material to the issue and requiring the subpoena duces tecum to be honored only to the extent of furnishing those questions, answers and statements which the respondent has found to be material. Based upon this interpretation of the limits of respondent's order, we quash the preliminary writ.

SMITH, P. J., and SATZ, J., concur.