Jerry WOLFSKILL, et al.,
Plaintiffs–Appellants,

v.

Chief D. Greg HENDERSON, et al.,
Defendants–Respondents.

No. WD 44288.

Missouri Court of Appeals,
Western District.

Dec. 24, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 28, 1992.

Michael Allan Wee, Kansas City, for plaintiffs-appellants.

William C. Martucci, Linda P. Guevel, Kansas City, and Debra L. Moore, Lee's Summit, for defendants-respondents.

Before LOWENSTEIN, C.J., and FENNER and ULRICH, JJ.

LOWENSTEIN, Chief Judge.

Appellants Jerry and Mickey R. Wolfskill requested disclosure of police department internal investigation records from the City of Lee's Summit, Missouri, Police Department and from other city officials. These officials denied appellants' request, stating they were closed under Missouri Sunshine Law, §§ 610.010–610.028, RSMo 1986, and the policies and ordinances of Lee's Summit ("City"). Appellants filed a suit for injunctive relief under § 610.027(1), seeking to enforce the public access provisions of the Sunshine Law. A court-tried case resulted in a judgment for respondents, finding that the records in question were properly closed from public scrutiny. Three points are raised on appeal: 1) the trial court erred as a matter of law in ruling that the investigative police reports were "personnel records" closed to appellants within the meaning of the Sunshine Law, 2) the court erred as a matter of law in ruling the city policies and ordinances were consistent with the Missouri Sunshine Law, and 3) the trial court erred as a matter of law in ruling that respondents did not purposefully violate the Sunshine Law in not maintaining a written policy under § 610.028.2, not designating a records custodian under § 610.023.1, or not responding in a timely fashion to appellants' request for access under § 610.023.3–.4.

Under the standard and scope of review, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), this court accepts the findings of fact of the trial court. Initially, the following communications between appellants and the City occurred regarding appellants' access to investigative records:

1. On July 5, 1988, appellants filed a citizens complaint with the police department. On August 17, Chief Henderson sent appellants a letter stating that the investigation had resulted in disciplinary action against involved officers.

2. In August, 1988, appellant Jerry Wolfskill called the police department requesting access to the investigative file, and was told that it was closed to the public.

3. On March 22, 1989, appellants' retained counsel called Chief Henderson requesting access to the records, and asking for dept. policy on such requests.

4. Chief Henderson did not respond.

5. On March 23, 1989, appellants' counsel spoke with Rick Curneal, an administrator, again requesting access. Again access was denied, on the specific ground that the record was part of the City's personnel records, and closed to the public.

6. On May 30, 1989, appellants' counsel wrote to City's counsel, requesting access to the records.

7. On July 13, 1989, City's counsel denied access by letter, relying on City Ordinance No. 3125, Policy 85–80, and Missouri Sunshine Law.

The following policies and ordinances enacted by the City Board of Aldermen were in force during the above events:

Policy 85–80 on internal affairs investigations: "... all other documents, reports, forms and papers gathered during the investigation shall become part of the City's personnel records, and a copy of the final report shall be included in the personnel file of any employee affected by the investigation."

Ordinance No. 3125: "... Section 3. Except to the extent disclosure is otherwise required by law, and subject to additional actions on the part of the City of Lee's Summit as may be required by law, all meetings, records, and votes of the City of Lee's Summit or its governmental bodies are closed to the public, to the extent they relate to the following: ... (3) Hiring, firing, disciplining or promoting an employee of a public governmental body ... (10) Individually identifiable personnel records, performance ratings, or records pertaining to employees ...;"

Chief Henderson is the actual physical custodian of internal affairs records of the police department, while other personnel records for the police department are kept by Rick Curneal, assistant City administrator, with all other City records. Section 610.021, RSMo 1986, authorizes a public governmental body to close records to the

extent they relate to "[h]iring, firing, disciplining or promoting an employee of a public governmental body," or to "[i]ndividually identifiable personnel records." The trial court's *in camera* inspection of the internal investigation file in question revealed the following types of documents: the citizen complaint, correspondence with the citizens, interoffice memos on progress of investigation, statements from persons concerning events of complaint, reports of investigative officers recommending disciplinary measures, and administrative orders implementing disciplinary steps.

## I.

■■■■ Appellants argue that the investigative file was improperly labelled a "personnel" record by the City, and so improperly closed without a consideration of its contents. This court disagrees. First, this investigative file could be closed from public scrutiny. Section 610.021 and the City ordinance allow closure of records "to the extent they relate to" the disciplining of a public employee or individually identifiable personnel records. In the case of *Wilson v. McNeal,* 575 S.W.2d 802, 804–05 (Mo. App.1979), the court explicitly found that an internal investigatory file on the death of a man in police custody was made in contemplation of disciplinary proceedings which may have resulted in firing a public employee, and as such was subject to the closure authorizations of then § 610.025(4), RSMo Cum.Supp.1975. This court notes that the statute then allowed closure of records relating to "hiring, firing, or promotion of personnel" whereas the current statute includes "disciplining" personnel as an appropriate topic for closed records. It is clear that the file in question does, in the meaning of § 610.021, relate to the disciplining of a public employee. The trial court's *in camera* inspection of the file reveals that all documents relate to the incident which resulted in disciplinary action against several City police officers. As Chief Henderson testified, the totality of the investigative file is used to determine the appropriate, if any, departmental action on the matter. Also, the justifications for closing the file at all, though not spelled out in the statutes or in the City ordinances, are weighty. Chief Henderson noted that it is important to maintain confidentiality to encourage future cooperation with an internal investigation. In addition to police cooperation, testimony in *Wilson* revealed that much of such an investigation involved rumor and hearsay, often involving innocent civilians. *Id.* at 805. Practically speaking, Chief Henderson was well advised to place the documents in a file separate from other personnel records, and there is ample evidence that the entire investigative file related to a disciplinary matter. Therefore, the City had the authority, under Missouri state law and City ordinances, to close this record from public scrutiny.

■■■■ Second, that the City chose to close this record by transforming all internal investigative files into "personnel records," via Policy 85–80, does not contravene the spirit of the Missouri Sunshine Law. The Sunshine Law does not prescribe an exact method for closing records authorized to be closed. This is in contrast to the meeting closure method spelled out in § 610.022. Therefore, although the method employed by the City may be circuitous, it cannot be labelled invalid, as investigative files dealing with disciplinary matters are authorized to be closed under Missouri law. The fact that the police internal investigative files are kept separate from the bulk of City personnel files and in custody of the Chief of Police is not dispositive. Further, the statute does not require, nor can it practically contemplate, that the City must consider each file individually to see if it may be closed. That all the documents in the investigative file "relate" to the investigation, which may or may not have resulted in disciplinary action, is sufficient under the statute. A separate vote by the City on each document in a record, or on each record, is impractical and not required. This is not a situation where a "personnel record" was made, and then all documents relating to utility rate increases were dumped into it; rather, a record authorized to be closed by § 610.021 was deemed a member of a category which the City

closed under Ordinance No. 3125. The point is denied.

## II.

■ Appellants' second point on appeal is that the City ordinance and policy dealing with the closure of records does not conform with Missouri state law on the subject, as required by § 71.010, RSMo 1986. However, the City ordinance language tracks Missouri § 610.021 exactly, and so could hardly be more in conformity with Missouri Sunshine Law. That the City did not include a general purpose clause, as found in a separate section of the Sunshine Law (§ 610.011, calling for liberal construction of the Sunshine Laws), does not make the City ordinance invalid. The Missouri Supreme Court, in *Page Western v. Community Fire Protection*, 636 S.W.2d 65, 67 (Mo. banc 1982), stated that when the expressed or implied provisions of a statute and the ordinance are inconsistent, the ordinance is void, while the test for inconsistency is whether the ordinance "permits what the statute prohibits" or "prohibits what the statute permits," citing *Vest v. Kansas City*, 355 Mo. 1, 194 S.W.2d 38, 39 (1946). No inconsistency exists under this test between Ordinance No. 3125 and the Missouri Sunshine Law, and the point is denied.

## III.

■ The appellants' final point is that the City violated the Sunshine Laws by not maintaining a reasonable written policy on record closure, § 610.028.2, not designating a records custodian, § 610.023.1, and not responding in a timely fashion to appellants' request for access, § 610.023.3–.4. This court holds that the trial court correctly ruled against the appellants under the law.

As to a written policy, the city administrator, Rick Curneal, testified that he believed that the City Policy 85–80 and the City Ordinance No. 3125 together comprised the "policy" as to closure of public records, and further that if someone called the City, a copy of both would probably be furnished free of charge. Although this may not be the most "user friendly" proce-dure, the court believes it complies with the letter of § 610.028 in this case. Additionally, it is questionable that not providing such a written policy is a violation of the Sunshine Laws under § 610.027, which continually refers to remedies for "violation of sections 610.010 to 610.026," without separately including § 610.028, the "reasonable written policy" provision.

■ Second, the City did comply with the custodian appointment provision in § 610.023. That provision reads: "[e]ach public governmental body is to appoint a custodian who is to be responsible for the maintenance of that body's records ... identity and location of a public governmental body's custodian is to be made available upon request." Section 610.023.1. The record and the trial court's findings reflect that the City Administrator is the custodian of all City records, including police personnel records, while Chief Henderson is the sole custodian of the police internal investigation records. While there may have been some confusion by certain City employees or officials as to who kept the police investigative files and where they were within the City, Chief Henderson was the designated custodian. Most importantly, the appellants were not harmed by the lack of knowledge by City employees. Following Chief Henderson's letter telling them of the final disposition of the affair, appellants called the police department and requested access to the investigative file. An officer on duty denied access, telling appellants that those records were closed. The appellants therefore initially made the proper contact in order to request access, and have not been harmed by subsequent City employee confusion.

■ Third, the appellants were not denied access to the investigative file in an untimely fashion. The statute requires the request to be "acted upon as soon as possible, but in no event later than the end of the third business day following the date the request is received," and in case of a denial, "the custodian shall provide, upon request, a written statement of the grounds for such denial." Section 610.023.3–.4, RSMo 1986. Both the August call

to the police department and the March 23 call to Rick Curneal resulted in immediate, over the phone denial of access. Chief Henderson received a message regarding appellants' call of March 22, heard from Rick Curneal on March 23 that the request had been again denied, and believed it unnecessary to respond. In response to a request for written statement of grounds for denial made to the City's counsel on May 30, 1989, City's counsel responded on July 13, 1989. Although this last time period may seem beyond the three days required by the statute, the custodian himself was not asked to provide a written statement, and under the statute, this court finds no purposeful violation. The appellants' entire final point on appeal is denied.