STATE of Missouri, Respondent,

v.

**Richard ROE, Appellant.**

**Richard ROE, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 59480, 61197.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 1, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 7, 1993.

Application to Transfer Denied
Feb. 23, 1993.

Susan Kreher Roach, Chesterfield, William J. Swift, Columbia, John Klosterman, St. Louis, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Richard Roe, appeals his jury conviction for first degree murder and armed criminal action in the Circuit Court of the City of St. Louis. For these crimes, the court sentenced appellant, as a prior offender, to consecutive terms of life imprisonment without possibility of probation or parole on the murder count, and twenty-five years' imprisonment on the armed criminal action count. Appellant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. We affirm.

On September 10, 1989, a group consisting of appellant, John Hamil, Kristahle Adams, and others drove to the intersection of Lafayette and Lawrence to purchase crack cocaine. Hamil bought what he believed were two rocks of crack cocaine, and the group returned to Ms. Adams' house. At the house, Hamil discovered he had actually purchased two pieces of gravel.

Upon making this discovery, Hamil and appellant decided to return to the scene of the drug deal in order to "rip off" the dealer who had cheated them. The two wanted to take Ms. Adams' gun but she became upset and refused to allow them to take it. Hamil, appellant and the rest of the group then left the house and Ms. Adams went for a walk with her daughter.

While Ms. Adams was out walking, Hamil's car pulled up on the street, and appellant told Ms. Adams he had left his keys in her house. She gave appellant the keys to her house and told him to leave them in the mail slot. When she returned home, Ms. Adams saw the sheets on her bed had been pulled out, and the gun, which she kept under the mattress, was missing.

Hamil, appellant, and the others returned to the corner of Lafayette and Lawrence, where they "kind of roughed up" the swindler, but they did not shoot him. The group then retired to Mr. Bud's, a local bar. While at the bar, one of the group called Imo's and ordered a pizza, asking that it be delivered by James Donovan. The group believed Donovan had put sugar in the gas tank of a car Hamil had sold to appellant. When another delivery man appeared, the group ducked out of Mr. Bud's and went to another bar where they resumed drinking.

Finally, the group left the bar to go to Imo's on Spring and Delor, where Donovan worked. They parked their car in front of Donovan's, near the building's rear door. Donovan emerged from the door with some pizzas to deliver. Hamil approached Donovan and asked if Donovan had "messed with" the car. Donovan told Hamil to get away from him and pushed Hamil to the ground. Hamil looked up when he heard a shot, and saw appellant shoving something back into his waistband. Appellant and Hamil got back in the car and drove away. As they were leaving the scene, Hamil asked appellant what had happened and appellant responded he had shot Donovan.

Later that night, appellant confessed to his girlfriend, Ms. Adams, that he killed Donovan. Some time later, appellant repeated his confession to the police. A videotape of appellant's confession was played

for the jury at trial. Appellant's defense was that John Hamil had shot the victim, and appellant had confessed to the murder to protect himself, Ms. Adams and his mother from Hamil's alleged threats of harm.

The jury found appellant guilty of first degree murder and armed criminal action and the court sentenced him to life without possibility of probation or parole on the murder count, and a consecutive term of 25 years on the armed criminal action count. Appellant filed a Rule 29.15 motion on August 12, 1991, and an amended motion was filed on October 7, 1991. In his motion, appellant alleged ineffectiveness of counsel for failure to call three witnesses who would have testified that Hamil told them he had shot the victim. The court denied appellant's motion without a hearing. This appeal ensued.

■ For his first point on appeal, appellant claims the trial court erred when it allowed the State to define "reasonable doubt" during *voir dire*. This court, along with other Missouri courts, has held that counsel may not define reasonable doubt for the jury. *State v. Massey*, 817 S.W.2d 624, 626 (Mo.App., E.D.1991). It is proper, however, for the State to discuss the concept with the jury. *State v. Brown*, 822 S.W.2d 529, 530 (Mo.App., E.D.1991). To point out the difference between "definition" and "discussion," courts of this State use a three-part test. For reversal of a verdict, (1) the State must utter an incorrect definition of reasonable doubt before the jury, (2) defense counsel must object, and (3) if the objection was overruled, the State must continue to define reasonable doubt. *State v. Williams*, 659 S.W.2d 778, 782 (Mo. banc 1983).

■ Relevant excerpts from the State's *voir dire* examination are as follows:

MR. MOSS: ... What I need to know from you, though, is murder is made up like of three basic requirements, three basic legal elements. I have got to prove all three of them. If I do that, but you have a doubt about something else going in the case, can you still vote for conviction? You understand what I'm saying?

[VENIREMAN MALONEY]: Yes.

MR. MOSS: Could you?

[VENIREMAN MALONEY]: Yes.

MS. ROACH: Your Honor, object to the question by the prosecutor. I think he's asking for a commitment, and he's misleading the Jury in commenting on the law which is simply the your job, not the prosecutor's job.

THE COURT: Well, certainly both counsel are permitted to ask for a commitment that the Jury will follow the law. And that's the only commitment that we can ask of you at this time.

\* \* \* \* \* \*

MR. MOSS: Okay. Do you understand that I have the burden, the State has the burden of proof?

[VENIREWOMAN FRANK]: I understand that, yes.

MR. MOSS: All right, and the kind of proof I have to give you, the Judge has talked about, and that's beyond a reasonable doubt, on the elements of the crime? IN [sic] other words, the crime will be made up of—and he'll give you an instruction that says, "first, second, third," and that sort of thing. And those things I have to prove beyond a reasonable doubt? I don't have an additional burden. Now the question is, will you require me to exclude all doubt from your mind about everything that goes on in the case?

[VENIREWOMAN FRANK]: I thought I understood that if there was any doubt.

MS. ROACH: Your Honor, I'm going to object. The prosecutor is asking for a commitment from this Juror; and that's very improper.

THE COURT: Well, again, the only permissible commitment is one that the panel members will all follow the law, the instructions that the Court previously read, set out, the definition that's applicable for burden of proof. And it states that proof beyond a reasonable doubt is proof of the defendant's guilt that leaves you firmly convinced that the defendant is guilty, proof of the defendant's guilt.

The law does not require proof that overcomes every possible doubt. Proceed.

MR. MOSS: That's what I'm talking about.

MS. ROACH: Your Honor, again, I would renew my objection. It's your job to instruct the Jury on the law, not Mr. Moss's.

THE COURT: All right, I have instructed the Jury on the law I'm going to overrule the objection. I'll permit counsel to inquire as to whether the Jury can follow that.

\* \* \* \* \* \*

MR. MOSS: ... Is there any of you feel that I have to give you proof that overcomes any and every doubet [sic] you might have?

\* \* \* \* \* \*

The third bench, that starts with Miss Johnson, and ends—let's see now, with Mr. Paige. Okay, any of you feel that I should give you proof—and in your own mind that I should give you proof that overcomes every possible doubt that might occur to you?

\* \* \* \* \* \*

[VENIREWOMAN LIPPERT]: I thought it was your job as a prosecutor to prove that he's either guilty- or not guilty.

MR. MOSS: And I do that by proving beyond a reasonable doubt.

MS. ROACH: Your Honor, I'm going to object to the form of the question. He's assuming that he's going to prove beyond a reasonable doubt.

THE COURT: Now, I'm just going to read the instruction and that's it.

MR. MOSS: ... What we're saying that the Judge has defined reasonable doubt. And he's explained it as proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt, you understand? I don't have to overcome every possible doubt you might have. Thats [sic] what the law says.

From the above excerpts, it is evident to us that the State never gave an incorrect definition of reasonable doubt. Therefore, appellant's point fails. We further find counsel's remarks to be more a discussion of the reasonable doubt standard than an attempt at definition. Moreover, the trial court is accorded broad control over the nature and extent of *voir dire* questioning, and absent a clear abuse of that discretion, the entire *voir dire* proceeding is within the trial court's discretion. *State v. Woltering*, 810 S.W.2d 584, 588 (Mo.App., E.D. 1991). Point denied.

■ Appellant's second point concerns the denial of an evidentiary hearing on appellant's Rule 29.15 motion. Appellant claims ineffective assistance of counsel because his attorney failed to call three impeachment witnesses. At the outset, we note that the selection of witnesses and the decision not to call additional witnesses are matters of trial strategy. *Avery v. State*, 770 S.W.2d 440, 441 (Mo.App., E.D.1989). Moreover, this court has held a decision not to call a witness to testify is a matter of trial strategy that is "virtually unchallengeable." *Childress v. State*, 778 S.W.2d 3, 6 (Mo.App., E.D.1989). With the above general principals in mind, we turn to the case before us.

■ To be entitled to a hearing on the issue of failure to call witnesses, a movant must allege the witnesses could have been located through reasonable investigation, they would have testified if located, and their testimony would have provided a viable defense. *Thompson v. State*, 779 S.W.2d 666, 667 (Mo.App., E.D.1989). Moreover, the testimony of the absent witnesses must be more than merely cumulative of that which was offered at trial. *Henderson v. State*, 770 S.W.2d 422, 423 (Mo.App., E.D.1989).

■ The three witnesses appellant complains of, Randy Patterson, Vince Dileberto and Darryl Dickman, would each have tes-

tified Hamil had told them that he shot Donovan, and appellant was not guilty. This testimony would have been offered to impeach the testimony of John Hamil, who was a witness of the State.

Nowhere in his motion does appellant allege these three witnesses would have appeared to testify. More important, however, is the fact that failure to call impeachment witnesses does not warrant relief because, even if true, the facts do not establish a defense. *Lane v. State*, 778 S.W.2d 769, 771 (Mo.App., E.D.1989). Further, the decision to impeach an opposing witness is a matter of trial strategy. *State v. Garrett*, 813 S.W.2d 879, 882 (Mo.App., E.D. 1991). Failure to impeach a witness as a matter of trial strategy cannot constitute the basis for a charge of ineffective assistance of counsel. *McClain v. State*, 686 S.W.2d 879, 881 (Mo.App., E.D.1985). Point denied.

■ Appellant's third point is that the trial court erred when it refused to hold a hearing on appellant's claim of newly discovered evidence. The evidence at issue is that the prosecutor offered $100.00 to State's witness Kristahle Adams to induce her to prepare to testify on the State's behalf.

We begin our analysis of this point by noting that this behavior, if it occurred, is questionable. A criminal defendant's position is a difficult one, and our legal system has erected many safeguards to prevent unfair advantage on the part of the State. Where, as here, a prosecutor brings the almost limitless financial resources of the State to bear against an individual defendant, a clear case of unfair advantage could result.

■ Turning to the case before us, the facts reveal Ms. Adams did not take the money proffered by the State, and she did not stay home from work to study her deposition testimony. The monetary pressure exerted by the State failed to affect the behavior of the witness; thus, appellant was not prejudiced by it.

■ To be granted a new trial on a claim of newly discovered evidence, a defendant must show: (1) the facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial; (2) movant's lack of prior knowledge is not owing to any want of due diligence on his part; (3) the evidence is so material that it is likely to produce a different result at a new trial, and (4) the evidence is neither cumulative nor merely of an impeaching nature. *State v. Davis*, 698 S.W.2d 600, 602 (Mo.App., E.D.1985). It is defendant's burden to show the above requirements have been met. *State v. Hamilton*, 732 S.W.2d 553, 556 (Mo.App., E.D. 1987). Since appellant was not prejudiced by the prosecutor's action, the evidence is unlikely to produce a different result at a new trial. Moreover, the evidence serves only to impeach the testimony of Ms. Adams. Appellant has, therefore, failed to meet requirements (3) and (4) of the *Davis* test.

Due to appellant's failure to meet his burden, the court acted properly when it denied appellant's motion to hold a hearing, because, taking all facts alleged by appellant as true, appellant would still not be entitled to relief.

■ For his fourth point, appellant challenges the sufficiency of the evidence regarding the element of deliberation for first degree murder. As with all challenges regarding sufficiency of evidence, we view the evidence in the light most favorable to the State. *State v. Davis*, 753 S.W.2d 25, 26 (Mo.App., E.D.1988). We cannot reweigh the evidence; we must merely determine if there was sufficient evidence from which reasonable persons could have found the defendant guilty. *State v. Barbar*, 635 S.W.2d 342, 343 (Mo. 1982).

■ "Deliberation" is defined in RSMo § 565.002(3) (1986) as "cool reflection for any length of time no matter how brief[.]" It is not necessary that the actor brood over his actions for a long period of time.

*State v. Eggers,* 675 S.W.2d 923, 927 (Mo. App., E.D.1984). To satisfy the standard, the defendant must merely have considered taking another's life in a deliberate state of mind. *Id.*

■ Several facts support a finding of deliberation. First, appellant went to great lengths to deceive Ms. Adams and take her gun. He later told her he took it because "you don't take a knife into a gun fight," inferring that appellant knew an armed confrontation would take place that night. Moreover, during his videotaped confession, appellant demonstrated the shooting to the attending police. He reached into his back pocket, pulled out the gun, loaded the chamber, aimed and fired. Voluntary performance of all these acts suggests deliberation. Appellant later told Ms. Adams he aimed "right about where his heart would be," implying a desire to kill by hitting the heart. Based on the foregoing, it appears the evidence was sufficient to survive appellant's motion for judgment of acquittal and go the jury. Point denied.

Appellant's last point alleges the court erred by submitting Instruction 4, which defined "beyond a reasonable doubt" as being "firmly convinced" of the defendant's guilt. Both this court and the Missouri Supreme Court have rejected this argument too many times to mention. Point denied.

The decision of the trial court is affirmed in all respects.

KAROHL, C.J., and SMITH, J., concur.