**STATE of Missouri, ex rel. Mike FUS-SELMAN, Prosecuting Attorney, Randolph County, Relator,**

v.

**The Honorable Ronald M. BELT, Circuit Judge, 41st Judicial Circuit, Respondent.**

No. WD 50119.

Missouri Court of Appeals, Western District.

March 7, 1995.

Scott Hayes, Moberly, for relator.

Anthony Farrell, Trenton, for respondent.

Before SPINDEN, P.J., and ULRICH and ELLIS, JJ.

## ORIGINAL PROCEEDING IN PROHIBITION

SPINDEN, Presiding Judge.

In a criminal prosecution in *State of Missouri v. George S. Thompson,* Case No. CR194–13FX, in Macon County, the defense sought discovery of state documents sealed from discovery pursuant to Chapter 610, RSMo. The state asked the Honorable Ronald M. Belt, circuit judge of the 41st Judicial Circuit, for a protective order relieving it of any obligation to produce the records. Judge Belt denied the request.

The state sought our writ of prohibition ordering Judge Belt to grant the state's request. Prohibition is appropriate for review of a trial court's order when one of the parties alleges that the court has required unlawful discovery. *State ex rel. Thurman v. Franklin,* 810 S.W.2d 694, 696 (Mo.App. 1991). We issued an alternative order in prohibition on October 11, 1994. We make absolute that order in prohibition.

George S. Thompson is charged with six counts of assault in the second degree in connection with an automobile collision in the predawn hours of February 7, 1993, on U.S. 63 in Randolph County just north of Clark. Thompson's car collided with a car driven by Curtis Clifton Collins. Randle E. King, a Highway Patrol corporal, investigated the accident. King wrote in his accident report:

Statements from the drivers and physical evidence at the scene indicates south bound vehicle # 1 [driven by Thompson] crossed the center line and struck north bound vehicle # 2 [driven by Collins] near headon, in the north bound lane. At the point of impact a gouge mark in the concrete was located six feet two inches from the east edge of the road, inside the north bound lane. Vehicle # 1 left slide marks in the concrete inside the north bound lane until it came to rest one hundred and thirty-three feet south of the point of impact. A liquid trail was left by vehicle # 1 from point of impact to final resting place.... Both drivers' visibility was reduced by a heavy fog. Statement: # 1. I think I was dozing off. # 2. I don't know what happened.

King found no witnesses to the accident.

When King later interviewed the drivers at the hospital, he suspected both of driving under the influence of alcohol. He asked hospital personnel to administer a blood test to Thompson. Highway Patrol laboratory personnel determined that Thompson's blood alcohol concentration when he gave the blood sample was .08 percent. Although Collins refused King's request that he submit to a blood test, medical records indicate that Collins' blood alcohol concentration was .154 percent.

The state later charged Thompson with six counts of assault. King cited Collins with suspicion of driving while intoxicated, but the prosecutor filed a *nolle prosequi* dismissing the charge.

In preparing a defense of the charges against him, Thompson filed a motion on September 20, 1994, seeking production of documents. Thompson asked for "[a]ny and all complete, clear, and unmarked Alcohol Influence Report ... [and] Officer's Statement of Facts prepared by Randle King, the Missouri Highway Patrol, or any other investigatory agency prepared on Curtis Collins arising from an accident which occurred on February 7, 1993." In a notice to take King's deposition, Thompson asked for:

1.) Missouri State Highway Patrol Accident Report for the accident occurring on February 7, 1993 between George S. Thompson and Curtis C. Collins.

2.) Alcohol Influence Report on George S. Thompson and Curtis C. Collins.

3.) Copies of any and all traffic tickets issued to George S. Thompson and Curtis C. Collins arising from the accident on February 7, 1993.

4.) Any and all general orders pertaining to accident investigation, accident reconstruction, and accident reporting arising from the accident on February 7, 1993.

On September 28, 1994, the state asked the court to protect it from production of the requested documents. The state asserted:

Missouri's arrest records law is found at Section 610.100 through 610.120 RSMo. 1986. (Supp.1993). According to RSMo. Section 610.105 "if the person arrested is charged, but the case is subsequently nolle prosequied, dismissed or the accused is found not guilty ... official records pertaining to the case shall thereafter be closed records ... except as provided in Section 610.120". Access to records under RSMo. Section 610.120 is authorized for law enforcement agencies for purposes of prosecution, sentencing, etc. In addition, access to these confidential records would be authorized by presidential executive order among other listed reasons. None of the exceptions in Sectioni [sic] 610.120 apply and therefore Defendant is not entitled to any of the records pertaining to victim, Curtis Collins.

The trial court denied the state's motion.

The state contends in this motion for our writ of prohibition that Judge Belt exceeded his jurisdiction in denying the state's motion. It argues that Chapter 610 requires that records pertaining to charges which are later dismissed because of a prosecutor's *nolle prosequi* remain sealed except for enumerated exceptions not applicable here. Thompson responds that he is entitled to the records pursuant to the due process clauses of the United States and Missouri constitutions.

■ Section 610.105, RSMo 1994, seals the records which Thompson seeks. That statute says:

If the person arrested is charged but the case is subsequently nolle prossed, ... official records pertaining to the case shall thereafter be closed records when such case is finally terminated except that the disposition portion of the record may be accessed for purposes of exculpation and except as provided in section 610.120.

Section 610.120.1, RSMo 1994, says, "Records required to be closed ... shall be inaccessible to the general public and to all persons other than the defendant[.]" The statute sets forth exceptions, but neither party contends that they apply in this case. Hence, all of Collins' official records pertaining to King's citing him for drunken driving on February 7, 1993, were closed and not available to Thompson.

Thompson responds that his constitutionally-protected due process rights will be infringed without full disclosure of King's investigative reports. The trial court, which was in a position superior to ours to determine the significance of the material sought by Thompson, agreed and refused the state's request for protection.

Although "[n]o general right to discovery exists for criminal cases in Missouri," *State v. Garner*, 799 S.W.2d 950, 956 (Mo.App.1990), the United States Supreme Court has held that "the [state's] suppression ... of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Hence, the trial court was left to balance Collins' interests, protected by the General Assembly's mandate that his records be closed, against Thompson's due process right to exculpatory evidence.

■ Collins' interest in preserving confidentiality is entitled to great respect and the state is to be commended for the steps it has taken to protect it. However, the privilege Collins enjoys should not be broadly or expansively construed in this context of a defendant's attempt to obtain exculpatory evidence. This is because the privilege derogates the search for truth. Moreover, giving Collins' privilege a broad or expansive scope has the potential of cutting deeply into the guarantee of due process accorded Thompson

and of gravely impairing the basic function of the courts. The need for production of relevant evidence in a criminal prosecution is central to a fair adjudication of justice. "Although due process does not require all relevant evidence to be received ..., relevance, not prejudice, is the touchstone of due process, and this proposition is especially urgent where the evidence in question might tend to prove innocence." *State v. Ray*, 637 S.W.2d 708, 710 (Mo. banc 1982).[1] Without access to specific facts, a valid criminal defense can be frustrated.

 Nonetheless, Collins' interest in confidentiality should be protected to the full extent possible, even when it clashes with a criminal defendant's search for exculpatory evidence. We conclude, therefore, that, while the trial court correctly concluded that Thompson's due process right should be accorded great weight, it should have taken all steps available to protect Collins' interest.

Before the trial court allowed release of the documents to Thompson, it should have inspected them *in camera* to determine whether they, in fact, contained any exculpatory evidence. If they did not, he should have granted the state's motion and caused them to remain sealed. If they did, he should have informed Collins of his intent to release the portions containing exculpatory evidence to Thompson and given Collins an opportunity to be heard on the matter.

Hence, we make absolute our order in prohibition. The trial court shall set aside its order denying the state's motion for protective order. The trial court shall examine the records requested by Thompson *in camera* to determine whether they contain any evidence which might tend to prove Thompson's innocence. The trial court shall take all steps necessary for scrupulous protection against any release or publication of the information it finds is not admissible in evidence and relevant to the issues in the criminal prosecution of Thompson. All material which the trial court decides does not contain exculpatory evidence shall be restored to its privileged status and returned under seal to its lawful custodian.

All concur.

---

1. This case was overruled in part by *State v. Jones*, 716 S.W.2d 799 (Mo. banc 1986). The part overruled, however, is not relevant to this decision.