STATE of Missouri ex rel. Patrick
L. KING, Prosecuting Attorney
of Phelps County,[1] Relator,

v.

The Honorable Mary W. SHEFFIELD,
Associate Circuit Judge, Circuit Court
of Phelps County, Respondent.

No. 19758.

Missouri Court of Appeals,
Southern District,
Division Two.

June 29, 1995.

---

1. John D. Beger, Prosecuting Attorney of Phelps County, commenced this proceeding. He ceased holding office while this proceeding was pending. Patrick L. King, Beger's successor as Prosecuting Attorney of Phelps County, was automatically substituted as relator. Rule 52.13(d), Missouri Rules Civil Procedure (1995); *State ex rel. Cooper v. Washington County Commission*, 848 S.W.2d 620, 621 (Mo.App.E.D.1993).

Patrick L. King, Pros. Atty., Phelps County, Rolla, relator, pro se.

David L. Steelman, Bryan D. Scheiderer, Steelman & Gaunt, Rolla, for respondent.

CROW, Judge.

■ This original proceeding in prohibition arises from an attempt by an accused in a criminal case to compel production of personnel records of a deputy sheriff who is expected to be a State's witness. Because there is no transcript, we marshal the facts from the pleadings and briefs.[2]

The Prosecuting Attorney of Phelps County filed a two-count information against Dallas Lynn Pierce. Count I charged Pierce with the class A misdemeanor of assault in the third degree, § 565.070, RSMo 1986, by striking Michelle Honse. Count II charged Pierce with the class A misdemeanor of resisting arrest, § 575.150, RSMo 1986, by pulling away from the grasp of Deputy Sheriff M.D. Sowers. Pierce's case is pending before The Honorable Mary W. Sheffield, an associate circuit judge of the Circuit Court of Phelps County.

At the request of Pierce's lawyer, the Clerk of the Circuit Court issued a subpoena to the "Custodian of Personnel Records" of the Sheriff of Phelps County and another subpoena to the "Custodian of Personnel Records" of the Rolla Police Department. Each subpoena commanded the custodian to appear on a specified date at a designated time and bring "[a]ll personnel records, files, and other documents pertaining to Michael D. Sowers."[3]

The Prosecuting Attorney of Phelps County filed a motion to quash the subpoenas, alleging they were "irrelevant, and not designed to lead to the production of relevant evidence." In oral argument before Judge Sheffield, the prosecutor maintained the subpoenas were "burdensome and requested solely for the purpose of harassment."

Pierce's lawyer filed suggestions with Judge Sheffield in opposition to the prosecutor's motion to quash. The suggestions stated Pierce had reason to believe the subpoenaed documents would provide exculpatory evidence or would lead to exculpatory evidence and provide a defense or justification for the actions Pierce allegedly committed. In additional written suggestions to Judge Sheffield, Pierce's lawyer stated Pierce agreed to "a protective order preventing disclosure of said documents except at trial." The suggestions recommended an *in camera* review by Judge Sheffield "to determine the probative value of the requested documents."

Judge Sheffield entered the following order:

"The Custodian of Records is to produce the following documents which consists [sic] of the personnel file currently in the custody of the Rolla Police Department and the Phelps County Sheriffs Department relating to Michael D. Sowers for the period from the date of his appointment as a police officer to the present. Said writing should include all internal investigation reports of Officer Sowers personnel rec-

---

2. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Thornbury v.*

*Morris Oil Company, Inc.*, 846 S.W.2d 238, 239[1] n. 2 (Mo.App.S.D.1993).

3. We infer from the briefs that Sowers was formerly employed by the Rolla Police Department.

ords and all complaints relating to his conduct as a law enforcement officer.

The Custodian of Records is ordered to produce these records before the court on August 26, 1994 at 10:00 a.m. for an in camera review by the court with defense counsel and the Prosecuting Attorney ordered to be present for the court to determine the probative value of these requested documents.

It is further ordered that this court shall provide a protective order preventing disclosure of any of the above documents subject to the court's further order after the in camera review."

The prosecutor promptly commenced this prohibition proceeding, praying us to command Judge Sheffield to vacate the above order and to quash the subpoenas. We henceforth refer to the prosecutor as "Relator" and to Judge Sheffield as "Respondent." Rule 97.02, Missouri Rules of Civil Procedure (1995).

We entered a preliminary order in prohibition commanding Respondent to take no action to carry out the order and to refrain from compelling production of the records for the *in camera* inspection until further order from us.

Respondent filed a timely answer to Relator's petition, and the parties thereafter filed briefs.[4]

■ Prohibition is a proper remedy where a trial court orders disclosure of information which is exempt from discovery. *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 297 (Mo. banc 1986).

Our analysis begins with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct 1194, 10 L.Ed.2d 215 (1963). There, the accused and a companion, Boblit, were charged with the same murder. Before the accused's trial, his lawyer asked to see Boblit's extrajudicial statements. The prosecutor concealed a statement in which Boblit admitted he was the killer. The accused learned of this only after his conviction had been affirmed. The case reached the Supreme Court of the United States as a result of the accused's effort for

postconviction relief. The Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97[3].

Pierce's case differs from *Brady* in that Pierce does not allege the State is concealing any evidence favorable to him. Pierce makes only a nonspecific claim that the information he seeks will provide, or lead to, exculpatory evidence.

In that regard, Rule 25.03(A)(9), Missouri Rules of Criminal Procedure (1995), enables Pierce to compel disclosure of any material or information within the possession or control of the State which tends to negate Pierce's guilt, mitigate the degree of the offenses charged, or reduce the punishment. Pierce's use of the subpoenas indicates the material he wants is not within the possession or control of the State, as it was in *Brady*. If the State had possession or control of such information, Pierce could employ Rule 25.03(A)(9) to get it.

Furthermore, it is evident that the files Pierce wants contain no information about the incident from which the criminal case against him arose. Pierce's purpose in subpoenaing the files appears in suggestions he presented to Respondent. We quote:

"[Pierce] has reason to believe that several witnesses to the occurrence alleged in the information will testify that Deputy Sowers instigated or aggravated the events that lead to the charge of resisting arrest. If Deputy Sowers has been involved in similar incidents this would be evidence tending to negate the guilt of [Pierce], and such evidence would be contained in [Sowers's] personnel records. Prior civilian complaints against Deputy Sowers are relevant to establishing the officer's propensity for violence and aggression, and may be used for impeachment purposes."

Citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985),

---

4. Pierce's lawyers represent Respondent in this      prohibition proceeding.

Respondent asserts the duty to disclose extends not only to evidence relevant to guilt or innocence, but also to "evidence of an impeaching nature which would tend to cast discredit upon a prosecution witness."

In *Bagley,* the Supreme Court of the United States held that for discovery purposes, there is no distinction between exculpatory evidence and impeachment evidence. 473 U.S. at 676–77, 105 S.Ct. at 3380–81[2]. However, the opinion added that the government's failure to disclose information that might be helpful in cross-examining its witnesses amounts to a constitutional violation only if it deprives an accused of a fair trial. 473 U.S. at 678, 105 S.Ct. at 3381[3].

*Bagley,* like *Brady,* does not address the issue of what an accused must show in order to gain access to information in the personnel records of a law enforcement officer.

For similarity to Pierce's case, the nearest decision by the Supreme Court of the United States is *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). There, the accused was convicted of sexual crimes against his daughter. The conduct came to light when the daughter reported it to police, who referred the matter to the Pennsylvania Children and Youth Services (CYS), a protective service agency for children. Before trial, the accused subpoenaed CYS records regarding the daughter. CYS refused to obey the subpoena, claiming the records were privileged by reason of a Pennsylvania statute which made the records confidential, subject to certain specific exceptions. One exception allowed disclosure to a court of competent jurisdiction pursuant to court order.

The accused in *Ritchie* maintained he was entitled to the information in the CYS file because the data might include names of favorable witnesses or unspecified exculpatory evidence. 480 U.S. at 44, 107 S.Ct at 994. Pennsylvania argued it had a compelling interest in maintaining confidentiality of information about child abuse because victims and others with knowledge of such villainy are more willing to report it if they can do so without fear of disclosure. 480 U.S. at 60–61, 107 S.Ct. at 1003.

*Ritchie* held the accused's right to a fair trial could be fully protected by requiring that the CYS file be submitted to the trial court for *in camera* review. 480 U.S. at 60, 107 S.Ct. at 1002–03[20]. However, the opinion cautioned: "[The accused], of course, may not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence." 480 U.S. at 58 n. 15, 107 S.Ct. at 1002 n. 15.

*Ritchie* is similar to Pierce's case in that the file sought by the accused in *Ritchie* was confidential. The records Pierce subpoenaed are closed records by reason of § 610.021, RSMo Cum.Supp.1993.[5] *Wolfskill v. Henderson,* 823 S.W.2d 112, 113–14 (Mo.App. W.D.1991).

In *State ex rel. Jackson County Grand Jury v. Shinn,* 835 S.W.2d 347 (Mo.App.W.D. 1992), the Western District of this Court confirmed the public policy of Missouri that personnel records of police officers are closed to the public. *Id.* at 348. However, *Shinn* held such records are subject to subpoena by a grand jury because of the vital role grand juries play in law enforcement. *Id.* Inasmuch as the subpoenas for Sowers's records

---

5. Section 610.021 reads, in pertinent part:
    "Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close ... records ... to the extent they relate to the following:

    (3) ... disciplining ... of particular employees by a public governmental body when personal information about the employee is discussed or recorded. However, any vote on a final decision, when taken by a public governmental body, to ... discipline an employee of a public governmental body must be made avail-

able to the public within seventy-two hours of the close of the meeting where such action occurs ...

    (13) Individually identifiable personnel records, performance ratings or records pertaining to employees ... except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such;
    ...."

were not issued by a grand jury, *Shinn* does not govern Pierce's case.

A recent case involving disclosure of records closed to the public is *State ex rel. Fusselman v. Belt,* 893 S.W.2d 898 (Mo.App. W.D.1995). There, a car driven by Thompson collided with a car driven by Collins. Thompson was charged with multiple assaults in connection with the collision. Collins was cited for driving while intoxicated, but the prosecutor dismissed the charge.

Thompson, in preparing for trial, sought production of the investigation reports regarding Collins. The State objected, asserting that Missouri's arrest records law, §§ 610.100–.120, RSMo 1986, as amended, barred disclosure because the charge against Collins was dismissed.

The Western District of this Court recognized Collins had an interest in preserving confidentiality of the reports about him, and commended the State for its effort to protect such interest.[6] 893 S.W.2d at 900. However, the Court recognized Thompson had a due process right to discover evidence which might tend to prove innocence. *Id.* at 900–01. The Court held the trial judge should inspect the documents *in camera* to determine whether they contain any exculpatory evidence. *Id.* at 901. If they do not, the judge should allow the records to remain sealed. *Id.* If the documents contain exculpatory evidence, the judge should inform Collins of the judge's intent to release those portions to Thompson and give Collins an opportunity to be heard. *Id.*

*Fusselman* obviously differs from Pierce's case in that the files Pierce subpoenaed do not pertain to the incident from which the criminal case against him arose. What Pierce wants is anything in the files regarding misconduct by Sowers toward persons other than Pierce.

■ The record does not indicate Pierce cited any Missouri case to Respondent holding that misbehavior by an arresting officer toward someone other than the accused, on an occasion unrelated to the confrontation between the officer and the accused, is relevant on the issue of the accused's guilt or for impeachment. Respondent cites no such case to us. While there may be a plausible theory of admissibility in some circumstances, it is not our responsibility to formulate one in this proceeding.

Furthermore, the record demonstrates no showing by Pierce to Respondent that Pierce has any information that Sowers, prior to the incident involving Pierce, ever engaged in misconduct toward another. Pierce's argument to Respondent was only that if such misconduct had occurred, it would tend to negate Pierce's guilt and be admissible for impeachment.

In *State v. Parker,* 886 S.W.2d 908 (Mo. banc 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995), the accused sought production of personnel records of police officer witnesses. 886 S.W.2d at 916. The trial court reviewed the records of one officer (White) covering one five-month period on the basis that the accused claimed the victim told a roommate that White had been disciplined for failing to properly report the victim's complaints about the accused. The trial court denied production of the other officers' files. *Id.* Citing *Ritchie,* 480 U.S. at 58 n. 15, 107 S.Ct. at 1002 n. 15, the Supreme Court of Missouri held: "The defendant is not entitled to information on the mere possibility that it might be helpful, but must make 'some plausible showing' how the information would have been material and favorable." 886 S.W.2d at 917. The opinion continued:

> "Here, [the accused] has made no showing about the materiality or exculpatory nature of the files of officers, other than White. Of course, a personnel file *might* include helpful information. This mere possibility—unsupported by any facts—is insufficient under *Ritchie* to justify production of personnel files of officers other than White."

886 S.W.2d at 917[5].

■ Mindful of the edict in *Parker* and *Ritchie* that an accused may not require a

**6.** *Fusselman* did not consider whether the State, at the relation of the prosecuting attorney, had standing to resist discovery of the reports concerning Collins. In the instant prohibition proceeding, Respondent does not challenge Relator's standing to seek prohibition. Because the issue is neither raised nor briefed, we decline to address it.

trial judge to search a confidential record without first establishing a basis for his claim that it contains material evidence, we hold Pierce failed to meet that threshold requirement. We need not endeavor to catalog what he needed to show.[7] It is sufficient to point out he showed Respondent nothing.

To approve Respondent's order on the record here would give every accused in Missouri carte blanche to require the trial judge to examine the personnel record of each officer who participated in the investigation or arrest. While there may be cases where due process requires a trial judge to do so, the instant case, on the present record, is not one.

The preliminary order in prohibition is made absolute. Respondent is directed to cancel the *in camera* inspection of the subpoenaed records and to quash the subpoenas.

GARRISON, P.J., concurs.

PARRISH, J., concurs in result and files concurring opinion.

PARRISH, Judge, concurring.

I concur in the result reached. I write separately because the principal opinion includes a discussion of Rule 25.03(A)(9). The parties did not raise the applicability (or inapplicability) of that rule.

Under these circumstances, I do not think it necessary to consider Rule 25.03(A)(9). I state no opinion regarding the discussion of Rule 25.03(A)(9). In all other respects, I concur in the principal opinion.

7. A case where an accused made a sufficient showing for an *in camera* examination is *State ex rel. St. Louis County v. Block,* 622 S.W.2d 367 (Mo.App.E.D.1981). A case where an accused was unsuccessful in gaining access to an officer's personnel file is *State v. Garner,* 799 S.W.2d 950 (Mo.App.S.D.1990).