STATE of Missouri ex rel., Jeffrey
D. SLATTERY and J.B. Hunt
Transport, Inc., Relators,

v.

The Honorable Larry M. BURDITT,
Respondent.

No. WD 51091.

Missouri Court of Appeals,
Western District.

Nov. 21, 1995.

Jeffrey D. Slattery, Melody L. Nashan,
Watson & Marshall, L.C., Kansas City, for
relators.

Jeremiah W. (Jay) Nixon, Atty. Gen., John
R. Munich, Randy E. Hayman, Asst. Attys.
Gen., Jefferson City, for amicus State of Mo.

Timothy R. Cisar, Bridges, Cisar & Shel-
ton, Lake Ozark, for respondent.

Before LOWENSTEIN, P.J., and
HANNA and ELLIS, JJ.

LOWENSTEIN, Presiding Judge.

This action for prohibition under Rule 97
involves the attorney-client privilege and the

work product exception in the context of an inspection, via discovery, of all the files of an attorney representing the employer in a workers' compensation claim. The claimant is being criminally prosecuted for fraud under § 287.128, RSMo 1994, and now seeks to discover the complete file of his employer's attorney as an aid in his criminal defense.

Slattery, the relator, represents J.B. Hunt Transport in a claim for compensation filed by Donald Ethridge. Slattery and his firm are also involved in litigation to recover amounts they have already paid in workers' compensation benefits. Ethridge was operating a Hunt rig in Kansas and was injured in an accident with a car. Ethridge filed claims in Kansas and Missouri. After taking Ethridge's deposition, Slattery had questions as to the extent of the claimed injuries. Slattery authorized extensive surveillance of Ethridge's activities. Ethridge's deposition answers, along with video tapes, investigator's reports, and medical records were, at Hunt's request, sent by Slattery to the Fraud Unit of Division of Workers' Compensation. In 1992, in enacting H.B. 975, the general assembly established this unit as denominated in § 287.128 to investigate fraud and failure to comply with Missouri's compensation law as found in chapter 287. As applicable to this writ, under § 287.128.3 it is a class A misdemeanor to "Knowingly make or cause to be made any false or fraudulent material statement or material representation for the purpose of obtaining ... any benefit." Section 287.128.1(8). This statutory scheme provides in .6 and .7 of the section in question for the Fraud Unit to investigate and make a recommendation to the attorney general to prosecute, as was done here.

The Fraud Unit declared Ethridge's actions to have violated the statute. The attorney general then filed a seven count information against Ethridge for making false statements and representations. Not surprisingly, Ethridge's Missouri compensation claim for injuries to "head, neck, shoulders, back & both knees," has stagnated. However, in conjunction with *State v. Ethridge,* pending in the circuit court of Benton County, Ethridge has served a subpoena *duces tecum* on Slattery to produce at a deposition all files, documents, audio and video tapes, and other memoranda related to Ethridge or his spouse.

Slattery filed a motion to quash, claiming that Ethridge already had copies of everything Slattery's office had supplied to the state and the attorney general. He claimed that the rest of his files contained information that was work product for the pending compensation and civil litigation and was protected by the attorney-client privilege, which J.B. Hunt was unwilling to waive. He also pointed to Rule 1.6(a), which requires a lawyer to keep information relating to representation of a client confidential unless the client consents to disclosure. After some negotiation, and prior to the taking of his deposition, relator Slattery sent the remainder of his file to the respondent, Judge Burditt, for an *in camera* examination. The respondent judge presides over the criminal case in which the defendant seeks discovery. Burditt conducted an *in camera* review of the documents in order to decide whether Slattery could be deposed on the contents. The court's ruling was "... that by instituting these proceedings J.B. Hunt has waived any attorney-client privilege." This court's preliminary order issued.

Judge Burditt's decision never addressed whether the undisclosed portion of the relator's file or whether his attendant testimony came within the purview of § 491.060(3), RSMo 1994, which states, "the following persons shall be incompetent to testify: An attorney concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of the client." *State v. Carter,* 641 S.W.2d 54, 59 (Mo.banc 1982), *cert. denied* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 defines the closely-related doctrine of work product in criminal procedure as opinions, theories, or conclusions of the defendant's attorney and communications between client and attorney. *See also Foote v. Hart,* 728 S.W.2d 295, 297 (Mo.App.1987). "Work product," as it relates to discovery, is covered in Rule 56.01(b)(3) and (4), and allows discovery of documents prepared in anticipation of litigation only on a showing the party seeking discovery "has a substantial need of the ma-

terials in the preparation of the case." At this stage, this court knows no more about the content of Slattery's files than does the assistant attorney general assigned to try this suit. Therefore, the issue here is not a prosecutor withholding exculpatory evidence bearing on the guilt or innocence of the accused. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Lee v. State,* 573 S.W.2d 131, 133 (Mo.App.1978).

■ The issue is: are all the contents of an attorney's file (impressions and investigations) prepared for defending claims and effectuating subrogation in the civil and administrative arena, discoverable by the claimant-defendant in a criminal charge emanating from the same facts?

■ This court first rejects the notion that Slattery waived protection by filing the complaint and sending the fruits of some of his investigation to the Fraud Unit. Hunt's coming forward with the complaint did not automatically open up all attorney's files relating to the two compensation cases, defenses and subrogation remedies.

There is little law touching directly on what discovery must be given an accused in a criminal proceeding brought under § 287.128 by the attorney for an employer who reports the fraud.

Rule 25, which deals with disclosure and depositions in criminal cases, does not deal with the factual scenario present here. These facts require a decision as to what privileges between an attorney and a client will be enforced when a collision occurs with the basic right of a criminal defendant to discover exculpatory evidence.

Missouri case law has examined the attorney-client privilege in the context of discovery of factual information in a civil case. *State ex rel. Great American Insurance Co. v. Smith,* 574 S.W.2d 379 (Mo. banc 1978). In *Great American,* the relator insurance company hired investigators when the insured had a suspicious fire loss. The insurance company then denied payment and was sued for vexatious refusal to pay. 574 S.W.2d at 380. During discovery, the insurance company said the claim had been denied after relying on three letters it received from the company attorney. The writ forming the basis of the appellate court action was based on the refusal to disclose the three letters. After conducting an *in camera* inspection, the court held a hearing at which the attorney testified he had written the letters to give the company his opinion on the investigation and that state of the law. *Id.* at 381. The trial court determined that the content of the letters did not invoke the privilege. The Supreme Court disagreed. The Court held that the letters contained what the attorney had said to his client about the vexatious refusal claims of the insured, *Id.* at 385, and as such, the information requested for use against the insurance company was not discoverable. Additionally, the Court noted that the insured had already been provided with the investigative reports of both police and experts, so the insured was not disadvantaged in discovering evidence to prosecute the vexatious delay suit.

Although this court is shooting in the dark as to the undisclosed contents of attorney Slattery's file, the *Great American* decision is not controlling here, primarily for the reason that the party here requesting discovery is a defendant in a criminal case—one who faces the possibility of jail time. In *State ex rel. Fusselman v. Belt,* 893 S.W.2d 898 (Mo. App.1995), a criminal defendant was charged with assault for driving while intoxicated. The other driver was thought by the investigating trooper to be intoxicated, and was so charged, but those charges were dismissed, 893 S.W.2d at 899, those records were closed by operation of law. *Id.* at 900. The criminal defendant sought to discover the closed records, the prosecution balked, seeking a protective order, but the trial court ruled the discovery was in order, the prosecutor filed for a writ in prohibition. This court noted there is no general right to discovery in criminal cases in this state. *Id.* In language applicable to the case as presented at bar, this court said the interest in confidentiality is entitled to great respect, but "... should not be broadly or expansively construed in this context of a defendant's attempt to obtain exculpatory evidence. This is because the privilege derogates the search for truth ... [and] has the potential of cutting deeply

into the guarantee of due process accorded [the defendant] and gravely impairing the basic function of the courts. The need for production of relevant evidence in a criminal prosecution is central to a fair adjudication of justice." 893 S.W.2d at 900–01; *State v. Carter*, 641 S.W.2d at 58; *State v. Yates*, 442 S.W.2d 21, 25 (Mo.1969). *See also State v. Hembd*, 305 Minn. 120, 232 N.W.2d 872, 875–76 (1975) (holding that statutory privileges must give way to constitutional rights).

The *Fusselman* opinion, as pertinent here, offered a reasonable procedure to be followed when an "interest in confidentiality" in third party records "clashes with a criminal defendant's search for exculpatory evidence." *Id.* at 901. The court said that before the records were to be released to the defendant, the trial court "should have inspected them *in camera* to determine whether they contained any exculpatory evidence." *Id.* If the records did not contain exculpatory evidence, then they should be "restored to ... privileged status and returned under seal." *Id.*

By making the preliminary writ here absolute, the trial court is directed to make the same *in camera* inspection as was outlined in *Fusselman*. This opinion has assumed the information in the undisclosed files comes within attorney-client or work product. The trial court shall first make such a determination. If the court determines the files are so covered, then if the judge finds exculpatory evidence in the Slattery files, then the due process interest of the defendant Ethridge outweighs the attorney-client privilege or the preservation of work product, and that material must be produced by Slattery at his deposition. If the court determines the files do not contain exculpatory material, and is determined to be privileged or work product, then that material must be returned directly to Slattery.

All concur.