STATE of Missouri, Respondent,

v.

Harold L. NEWTON, Appellant.

Harold L. NEWTON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 63938, 68569.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 18, 1996.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

Before AHRENS, P.J., and SIMON and PUDLOWSKI, JJ.

SIMON, Judge.

Appellant, Harold Newton, appeals his sentences based upon findings of guilty by a jury of first degree murder, § 565.020 RSMo. 1994, armed criminal action in connection therewith, § 571.015 RSMo.1994, kidnapping, § 565.110 RSMo.1994, and armed criminal action in connection therewith, § 571.015 RSMo.1994 (all further references shall be to RSMo.1994 unless otherwise noted). He was sentenced as a prior and persistent offender as follows: Count I, first degree murder, life in prison without the possibility of probation or parole; Count II, kidnapping, thirty years to be served consecutively to the sentence imposed in Count I; Count III, armed criminal action, fifteen years to be served consecutively to the sentences imposed in Counts I and II; and Count IV, armed criminal action, fifteen years to be served concurrently to the sentence imposed in Count III, but consecutively to the sentences imposed in Counts I and II. Appellant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. The appeals are consolidated herein pursuant to Rule 29.15(*l* ).

On appeal, appellant contends that the trial court erred in: 1) quashing his subpoena requesting Carla Ennis' (Ennis) psychological records and in finding her competent to testify without examining such records; 2) limiting appellant's cross-examination of Ennis' credibility to an examination of her mental condition on May 25, 1991; and 3) sustaining the State's objection which precluded appellant from examining Geraldine Clark (Clark) regarding Ennis' use of crack cocaine the night of the incident. Appellant also contends that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing because: a) appellant's trial counsel failed to call Wayne Kibble as a witness; b) the prosecuting attorney knowingly used false or misleading evidence to obtain appellant's conviction; and c) newly discovered evidence would have prevented appellant from being found guilty of first degree murder. Cause remanded with directions.

Appellant does not contest the sufficiency of the evidence. In a light most favorable to the verdicts the facts are as follows. On May 25, 1991, at approximately 10:00 p.m., Ennis, Patricia Williams, Clark, and Neal Hurst (victim) were walking towards victim's home when they noticed a white four-door Dodge Shadow parked in front of his home. Ennis and victim approached the car, and Ennis stuck her head in the open window

where she observed the driver of the car, Michael Johnson (Johnson). Johnson then placed a gun to her head and warned "Bitch, go, get away from the car." As she backed away from the car, Montez Woods (Woods) got out of the rear passenger seat, and holding a gun, told victim, "Punk, get in the car." As victim got into the car, Ennis ran to the front door of victim's house where she saw appellant come out of the house holding a gun. Appellant got into the car with Johnson, Woods, and victim. Ennis then called 911 to report the incident to the police.

In the early morning hours of May 26, 1991, police began pursuing the car, which at this point, had at least four occupants, one of which was victim. As the chase ensued, several gunshots were fired from inside the vehicle, after which victim dropped out of sight. At this time, a handgun was thrown from the passenger side window of the vehicle. As the pursuit continued, two more handguns were thrown from the passenger side of the car.

Eventually, the pursuit ended and Woods and appellant fled the car. Johnson, who remained, was arrested. Victim's body remained in the vehicle with five bullets in his chest and abdomen. He was dead by the time the pursuit ended. Woods was caught and arrested, but appellant escaped.

The next day, Ennis positively identified Johnson as the driver and Woods as the person in the right rear passenger seat. She also identified appellant as the third person involved in the kidnapping and murder. Furthermore, appellant's fingerprints were found on the outside of the right front passenger door of the white Dodge and his wallet was in the glove compartment. On June 18, 1991, the Kansas City Police arrested appellant at the Roadway Inn near Kansas City, Missouri.

The trial court held a pre-trial hearing to determine if Ennis was competent to testify. At the hearing, she testified that she had a present recollection of what happened, that she has testified about the incident on four separate occasions, that she understood that the oath places her under an obligation to tell the truth, and that she was oriented to the date and time. She also testified that she

was not taking anti-psychotic drugs or crack cocaine on the date of the incident, or at any time that she has given testimony in this matter. She testified that she was prescribed the drugs Stelazine, Cogentin, and Prozac, but that she had only taken one pill of these three on one occasion in January, 1993, and never took any more. She testified that she was not experiencing hallucinations at any of the relevant times, and that she had not been committed to a mental institution since the murder. After this testimony, the trial court denied appellant's motion to find Ennis incompetent to testify, and denied his motion to produce her medical records because she asserted her physician-patient privilege.

At trial, the medical examiner determined that victim was most likely shot by the person in the right front passenger seat because of the trajectory of the bullets through victim's body, but he could not completely rule out the right rear passenger as the shooter. Appellant did not testify on his own behalf, but presented the testimony of several witnesses who provided him with an alibi during the kidnapping and murder. In addition, appellant presented the testimony of several witnesses to contradict Ennis' testimony, as well as to testify that Ennis had a bad reputation for truthfulness and honesty. The jury returned guilty verdicts on all counts.

On November 28, 1994, appellant filed his *pro se* Rule 29.15 motion, which was amended by appointed counsel on February 21, 1995. Thereafter, the motion court entered findings of fact and conclusions of law denying the amended motion without an evidentiary hearing.

In his first point on appeal, appellant contends that the trial court erred in quashing his subpoena requesting Ennis' psychological records and in finding her competent to testify without examining such records, because they contain exculpatory information in his favor. The State contends that said records are privileged and undiscoverable so long as Ennis asserts her physician-patient privilege as she did in this case, pursuant to § 491.060. However, the State concedes that this issue has not been addressed by Missouri courts.

■ Determination of competency of a witness to give testimony is for the discretion of the trial court and will not be reversed except for clear abuse. *State v. Robinson,* 835 S.W.2d 303, 307[10] (Mo.banc 1992).

■ Prosecutors must disclose, even without a request, exculpatory evidence, including evidence that may be used to impeach a government witness. *U.S. v. Bagley,* 473 U.S. 667, 674–77, 105 S.Ct. 3375, 3379–81, 87 L.Ed.2d 481 (1985). In order for the suppression of said evidence to rise to a constitutional violation, the evidence must be material in the sense that its suppression undermines confidence in the outcome of the trial. *Bagley,* 473 U.S. at 678[3], 105 S.Ct. at 3381.

■ In *U.S. v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the United States Supreme Court addressed the issue of whether a constitutionally-based or statutorily-based privilege overrides a defendant's right to have relevant and material evidence produced through discovery. In *Nixon,* the Court recognized the importance of privileges in protecting confidentiality, but held that such privileges are not expansively construed because they are in derogation of the search for truth. *Nixon,* 418 U.S. at 709–710[43], 94 S.Ct. at 3108. The Court further held:

> The right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced ...
>
> On the other hand, the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts.

*Nixon,* 418 U.S. at 711–712[45,46], 94 S.Ct. at 3109–3110. The Court concluded by holding that when the ground for asserting a privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. *Nixon,* 418 U.S. at 713[47,48], 94 S.Ct. at 3110. The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial. *Id.* To provide protection against public disclosure of the alleged privileged material, the trial court should conduct an *in camera* inspection of the evidence, and determine if it is relevant and material. *Nixon,* 418 U.S. at 714, 715[52–55], 94 S.Ct. at 3110–3111; *see also State ex rel. Fusselman v. Belt,* 893 S.W.2d 898, 901[3] (Mo.App.1995).

Here, Ennis is an important State's witness in that her testimony placed appellant at victim's home at the time of the kidnapping. Appellant contends that Ennis' psychological records contain vital impeachment evidence. Specifically, appellant contends Ennis may have experienced hallucinations at the time of the kidnapping and murder.

■ Missouri presumes that a witness is competent to testify, except for a few statutory exceptions including mental incapacity. *Robinson,* 835 S.W.2d at 307[5, 6]; *see* § 491.060. A witness is competent to testify if the witness shows: 1) a present understanding of, or the ability to understand upon instruction, the obligation to speak the truth; 2) the capacity to observe the occurrence about which testimony is sought; 3) the capacity to remember the occurrence about which testimony is sought; and 4) the capacity to translate the occurrence into words. *Id.* Clearly, evidence indicating that Ennis hallucinated is relevant and material in challenging her competency to testify, as it may have affected her capacity to observe the incident in question.

Here, the record does not indicate that the trial court conducted an *in camera* review of Ennis' psychological records, and they are not part of the record on appeal. Since

Ennis is a key State's witness, the trial court erred in quashing appellant's subpoena, and we remand to the trial court for an *in camera* inspection of her records. Nonetheless, Ennis' interest in confidentiality should be protected to the full extent possible, even when it clashes with appellant's search for relevant and material evidence. Therefore, the trial court should inspect the records *in camera* to determine whether they contain any relevant and material evidence. If they do not contain said evidence, the trial court shall enter an appropriate order, restore the records to their privileged status and return them under seal to their lawful custodian. The trial court shall then certify to this court a copy of its order.

If the records do contain relevant and material evidence, the trial court shall: 1) give copies of the alleged relevant and material records to both prosecution and defense counsel; and 2) convene an evidentiary hearing at which both counsel may attack or defend the relevancy and materiality of the records. After the hearing, the trial court shall certify to this court a record of its proceeding and finding, including copies of the psychological records. *See Fusselman*, 893 S.W.2d at 901[3].

Additionally, the State contends that since it did not have possession of the psychological reports in question, appellant was not entitled to them. However, our Supreme Court has held that prosecutors cannot evade their duty to disclose exculpatory evidence by never gaining possession of the medical records in question. *Robinson*, 835 S.W.2d at 306[1–3]. Therefore, the State's failure to gain possession of Ennis' records does not preclude appellant's right to obtain such evidence.

In his second point on appeal, appellant contends that the trial court erred in limiting his cross-examination of Ennis to an examination of her mental state before and during the incident in question. Appellant contends that he should have been able to cross-examine Ennis regarding her mental state at any time after the kidnapping and murder.

The scope of cross-examination and the determination of matters that may bear on a witnesses' credibility are largely within the discretion of the trial court. *State v. Dunn*, 817 S.W.2d 241, 245 (Mo.banc 1991). The trial court is vested with broad discretion over questions concerning the relevance and admissibility of evidence. *State v. Coats*, 835 S.W.2d 430, 433 (Mo.App.1992). Such discretion shall not be disturbed on appeal absent a clear abuse of discretion. *Id.*

Here, during a meeting in chambers with counsel for appellant and the State, the court informed defense counsel that he could question Ennis about her drug use, drinking, and mental health prior to and at the time she observed the kidnapping. Furthermore, the trial court would allow appellant to examine her about these matters concerning any time that she was presenting testimony in this case. The trial court also would allow appellant to make an offer of proof, outside the hearing of the jury, to determine if her drug problem would disqualify her as a witness by rendering her incompetent.

During cross-examination, appellant questioned Ennis about specific instances of crack cocaine use on the day of the crime, both before and after she witnessed victim's kidnapping. Appellant also cross-examined her regarding her alleged drinking the night of the incident. She also denied that she was taking Stelazine, Cogentin, or Prozac on the date of her observations. The trial court refused to allow appellant to ask her about an alleged suicide attempt she made several days after the kidnapping and murder.

Here, appellant has not pointed out any evidence or testimony, excluded by the trial court during cross-examination, which reflects on Ennis' ability to recollect her observations of the kidnapping. Appellant has not demonstrated how the alleged suicide attempt would have impeached Ennis' recollection of the incident. Appellant contends that he should have been allowed to cross-examine her regarding her entire psychiatric history, without pointing to any specific facts which reflect on her ability to observe and remember. As a result, we find no abuse of discretion by the trial court.

In his third point on appeal, appellant contends that the trial court erred in sustaining the State's objection which precluded him

from examining Clark regarding Ennis' use of crack cocaine the night of the kidnapping and murder. Appellant contends Clark would have testified that she saw Ennis with crack cocaine shortly after the kidnapping.

Generally, appellate courts will not review excluded evidence without a specific and definite offer of proof. *Frank v. Environmental Sanitation Management,* 687 S.W.2d 876, 883[14,15] (Mo.banc 1985). Here, appellant did not make an offer of proof regarding Clark's observation that Ennis used crack cocaine shortly after the kidnapping. As a result, it would be a guess as to what her testimony would have been and if it was properly excluded. Therefore, appellant's third point was not properly preserved for review. Point denied.

In his fourth point on appeal, appellant contends that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing because his trial counsel failed to call Wayne Kibble as a witness. Appellant contends Kibble's testimony would have served to impeach Ennis, and thereby create reasonable doubt as to his involvement in the kidnapping and murder.

To be entitled to a hearing on the issue of failure to call a witness, movant must allege that the witness could have been located through reasonable investigation, he would have testified if located, and his testimony would have provided a viable defense. *State v. Roe,* 845 S.W.2d 601, 605[4] (Mo.App.1992). The failure to call impeachment witnesses does not warrant relief because, even if true, the facts do not establish a defense. *Id.* at 605–606[5].

Here, appellant contends that Kibble would have testified that he did not see anyone run out of victim's home, or anyone run towards the door of victim's home at the time of the kidnapping. Appellant contends that this would have impeached Ennis' testimony that she saw appellant standing in the doorway of victim's home during the kidnapping. However, this testimony does not establish a defense, as it only serves to impeach Ennis. Consequently, the failure to call Kibble as a witness does not entitle appellant to relief. *See Roe, supra.* Point denied.

In his fifth point on appeal, appellant contends that the motion court erred in denying his Rule 29.15 motion because the prosecutor knowingly used false or misleading evidence to obtain the conviction. Specifically, appellant contends that the prosecutor in his case argued that appellant shot victim, while during Woods' trial, he argued Woods shot victim. Therefore, the State is collaterally estopped from arguing appellant shot victim.

Collateral estoppel only applies to bar relitigation of the same issue in criminal cases between the same parties. *State v. Fondren,* 810 S.W.2d 685, 688[6,7] (Mo.App.1991). Here, appellant was not a party to the criminal proceedings against Woods, and any issue which may have been litigated or any position that the State may have taken in Woods' case does not limit the State in its prosecution of appellant. As a result, collateral estoppel does not apply. Point denied.

In his sixth point on appeal, appellant essentially re-alleges his arguments in support of his fifth point, but characterizes the prosecutor's arguments at Woods' trial as newly acquired evidence, which if the jury would have heard, they would have not found appellant guilty of first degree murder.

A post-conviction proceeding is not the proper vehicle for relief on the basis of newly discovered evidence. *Bremmer v. State,* 787 S.W.2d 761, 762[1] (Mo.App.1990). This is so even where the newly discovered evidence is evidence of another person's guilt of the crime for which movant was convicted. *Id.* As a result, appellant's allegation of newly discovered evidence is not recognizable in his post-conviction proceeding. Point denied.

Therefore, the cause is remanded to the trial court to conduct an *in camera* review of Ennis' psychological records in accordance with this opinion.

Cause remanded with directions.

PUDLOWSKI, P.J., and HOFF, J., concur.